PIERCE, Acting Chief Judge.
This is an appeal by appellant Lottie Mae Fussell, caveator below, from an order entered January 18, 1968, by the County Judge for Lee County, admitting to probate the will of Donella Morgan Duke, deceased.
The will was offered for probate by Charles W. Flint, son of the testatrix. Mrs. Fussell, one of the daughters of tes *125 tatrix, challenged the probate on the ground of undue influence exerted upon the testatrix by the proponent Flint. The daughter contended that the testatrix was susceptible to influence by her brother Charles, accelerated because of their mother’s age of 72 years with resulting mental and physical infirmities, namely, a heart condition, with resulting blockage of blood vessels making her weak and infirm and causing her pain.
On October 5, 1965, the testatrix-mother had executed a will devising different items of her property to her varied descendants. She had devised her homeplace jointly to her grandson, Robert Maphis, and a great grandson, Tyrone Maphis. She had devised to her daughter, Mrs. Fus-sell, her Russell Park property. She had devised another piece of property to her son Charles. The remainder of her property she left in four parts, one part each: to a daughter, Mrs. Sando; to Robert and Tyrone Maphis jointly; to her daughter Mrs. Fussell; and to her son Charles. The Lee County National Bank was named executor.
On August 10, 1967, Mrs. Duke executed a new will, making several changes in distribution of her property. To her daughter Mrs. Sando and to her grandson, Robert Maphis, she bequeathed $500.00 each in cash. To a grandson, Joseph George Flint, the son of Charles, she devised her home-place that she had formerly left to Robert and Tyrone Maphis. To her son Charles she devised and bequeathed all the remainder of her property, including the Russell Park property she had formerly left to her daughter Mrs. Fussell, who was not mentioned in the later will. Charles was named executor, with the Lee County bank as alternate executor.
Mrs. Duke, the testatrix, died on September 2, 1967, and in due course Charles presented the August 10th will for probate. Mrs. Fussell, the daughter, opposed the petition for probate. The issues so joined were tried before the County Judge, during which numerous witnesses testified both for the proponent Charles and the caveator Mrs. Fussell.
The County Judge entered final order finding that there was “no evidence that undue influence was exerted in any way by Charles Flint” nor that the “mind of the testator was overcome by force, fear, coercion, or over-persuasion or that undue influence was exerted in the execution of the will so as to destroy or hamper the free agency and will power of the testator.” The will in question was thereupon admitted to probate. The caveator, Mrs. Fus-sell, appeals the order to this Court. We affirm.
This case is essentially a “fact case.” It is unnecessary to review or compare here the testimony of the various witnesses. It would be a presumptive exercise of futility to do so. It is not our function to re-try the case. It was well tried by the able County Judge below. The testimony taken as a whóle indicates rather conclusively that the decedent, Mrs. Duke, was a strong-willed woman of sound mind, well able to look after her own business affairs and amply able to form her own opinion. All this would tend to give her ample testamentary capacity to execute a will, even if it altered materially the provisions of a prior will. These factors would also tend to dissipate any probability that she would be unduly influenced by anyone, whether relative or stranger.
The scrivener of the will, Mr. Harry Blair, a local attorney, testified that several days prior to August 10, 1967, the date the subject will was executed, decedent came to see him in his office for the avowed purpose of changing her will. She related to him the changes she wanted made, the reason being “she didn’t believe that some of her children had treated her right.” He questioned her closely to ascertain that she knew what she was doing in relation to her children, whether “she was sure this was what she wanted to do and had she taken into consideration all of her children and the pros and cons.” She said she did. *126 Her son Charles was with her and he said: “Mother, it is up to you, whatever you want to do, it is your money and it is your property.”
On August 10th she again came to the attorney’s office, this time alone, and at that time he asked her twice, once alone and later in the presence of witnesses, if “this is what you want” indicating the changes in the will. Each time she answered “yes, sir.” She thereupon executed the will in proper form before the requisite witnesses.
The burden of establishing undue influence was on the contestant, Mrs. Fus-sell. In re Perez’s Estate, Fla.App.1968, 206 So.2d 58. And the mere confidential relationship, in absence of the element of active procurement, does not raise a presumption of undue influence in execution of a will. In re Joiner’s Estate, Fla.1963, 156 So.2d 161. Kindness and solicitude are not evidence of undue influence, and confidential relations between the testator during lifetime and the legatee offering the will to probate are not sufficient to raise a presumption of undue influence and to thereby cast the burden of proof upon the proponent in that regard. In re Starr’s Estate, 1936, 125 Fla. 536, 170 So. 620; Marston v. Churchill, 1939, 137 Fla. 154, 187 So. 762; In re Peter’s Estate, 1945, 155 Fla. 20, 20 So.2d 487.
The applicable principles were well blocked out by Justice Armstead Brown in In re Starr’s Estate, supra, text 623, as follows:
“To authorize a court to deny or revoke the probate of a will on the ground of undue influence, there must be active use of such undue influence for the purpose of securing the execution of the will to such an extent as to coerce the mind of the testator, so that it cannot be said that the testator was acting voluntarily, of his or her own free will and volition. Confidential relations between the testator in his lifetime and the legatee who offers the will for probate are not alone sufficient to raise a presumption of undue influence and cast the burden of proof upon the proponent in that regard. Bancroft v. Otis, 91 Ala. 279, 8 So. 286, 24 Am.St.Rep. 904.
In the case of Newman v. Smith, 77 Fla. 633, 667, 668, 82 So. 236, 246, this court stated: ‘Undue influence comprehends over persuasion, coercion, or force that destroys or hampers the free agency and will power of the testator. Mere affection or attachment, or a desire to gratify the wishes of one beloved, respected, and trusted, may not, of itself, amount to undue influence affecting the testamentary capacity of a testator.’
In Peacock v. DuBois, 90 Fla. 162, 105 So. 321:' ‘To constitute “undue influence,” the mind * * * must be so controlled or affected by persuasion or pressure, artful, or fraudulent contrivances, or by the insidious influences of persons in close confidential relations with him, that he is not left to act intelligently, understandingly, and voluntarily, but * * * subject to the will or purposes of another. * * *
The rule seems to be well settled that undue influence justifying the setting aside of will, deed, or other contract must be such as to dethrone the free agency of the person making it and rendering his act the product of the will of another instead of his own.’ ”
The fact that the daughter Mrs. Fussell was cut off in the subject will of August 10, 1967 does not necessarily create any presumption of lack of testamentary capacity. This 2nd District Court in an opinion authored by the writer in Roberts v. Bryant, Fla.App.1967, 201 So.2d 811, text 816, said:
“While it is the usual thing for a parent to provide for all his children as the ‘natural objects of his bounty’ there is no law to prevent the exclusion of some or all of his offsprings; nor does such exclusion necessarily raise a pre *127 sumption of incompetency of the benefactor or fraud of the beneficiary.”
A careful reading of the record in the instant suit discloses ample substantial, competent, evidence supporting the findings and order of the County Judge, and no error of law in the trial of the case has been made to appear. It follows that the order appealed from must be and is herewith—
Affirmed.
MANN and McNULTY, JJ., concur.