332 So.2d 321 (1976)
The CANAL AUTHORITY of the State of Florida, a Body Corporate under the Laws of the State of Florida, Appellant,
v.
OCALA MANUFACTURING, ICE AND PACKING COMPANY, a Florida Corporation, Appellee.
No. 46551.
Supreme Court of Florida.
April 14, 1976.
Rehearing Denied June 16, 1978.
*322 Ralph E. Elliott, Jr., Frank C. Decker, and Allan P. Clark of Caven & Clark, Jacksonville, for appellant.
R. Lee Smith and C. Ray Greene, Jr. of Greene, Greene, Smith & Davenport, Jacksonville, for appellee.
SUNDBERG, Justice.
This cause is before us on appeal from a decision of the District Court of Appeal, First District, reported at 301 So.2d 495. We have jurisdiction pursuant to Article V, Section 3(b)(1), Florida Constitution, inasmuch as that appellate decision construed Article X, Section 6, Florida Constitution. By that opinion the trial court was reversed and was directed to enter a judgment for appellee for damages in the aggregate amount of $433,561.00.
Since the issues in this case are so interrelated with the much-litigated condemnation proceedings between these parties, we deem it advisable to summarize as briefly as possible the manner in which this matter has proceeded through the courts.
In 1969 appellant brought eminent domain proceedings in the Marion County Circuit Court (Case # 69-203) to condemn the fee simple title to approximately 3500 acres in Marion County owned by appellee Ocala Manufacturing (Ocala) for construction of the Cross-Florida Barge Canal. (The subject property consisted of five parcels, of which Parcel No. 1 was by far the largest.) Shortly after the Marion County suit was filed, appellee filed suit in Duval County (Case # 70-2880) to enjoin the expenditure of public funds by the Canal Authority for the purpose of obtaining title to Ocala's lands. The Duval County Circuit Court dismissed the cause with prejudice, and Ocala appealed. The First District Court of Appeal reversed and remanded, holding that, even if the complaint were insufficient to state a cause for relief, where evidence advanced at hearings on pretrial motions indicated that Ocala might be entitled to relief, the complaint should not have been dismissed without giving the plaintiff an opportunity to amend. 249 So.2d 729 (1st D.C.A.Fla. 1971).
We return to the Marion County eminent domain proceeding (Case # 69-203). There the trial judge refused to approve the condemnation of the fee simple title to all but approximately 500 acres; instead, in regard to Parcel No. 1, the court ruled that appellant could secure only a perpetual easement for the various necessary purposes. Having been informed by the U.S. Army Corps of Engineers that a perpetual easement would not suffice, the Canal Authority dismissed Parcel No. 1 from the condemnation proceedings. After trial regarding the remaining four parcels, the jury returned a verdict for appellee in the amount of $575,292.00 with no breakdown of elements which went into the award. The circuit court entered a final judgment in the amount fixed by the jury, vesting fee simple title in the Canal Authority with respect to Parcels Nos. 2 and 5 and perpetual easements as to Parcels Nos. 3 and 4; the judgment was silent as to Parcel No. 1.[1] After dismissal of its condemnation proceeding with respect to Parcel No. 1, the Canal Authority asked the U.S. Army Corps of Engineers to acquire that parcel by means of a federal eminent domain suit, *323 with the understanding that the Authority would reimburse the United States for the cost of the condemned land. In October, 1969, such a condemnation suit was filed in the U.S. District Court for the Middle District of Florida, and in September, 1970, the Canal Authority entered an appearance in that case, claiming an interest in the property by virtue of the judgment in the Marion County action. Thereafter, the United States amended its complaint by naming the Canal Authority as a party in interest. In late 1970 a federal jury found the sum of $1,093,316.50 to be just compensation for the taking of Parcel No. 1, and judgment was entered in that amount. The federal judge held a non-jury apportionment trial and divided the award by granting $850,000.00 to Ocala Manufacturing and $243,316.50 to the Canal Authority. In 1971, after the denial of post-trial motions, all three parties  Ocala Manufacturing, Canal Authority and the United States  appealed.
The Fifth Circuit Court of Appeals reversed, holding that the State condemnation award which approved the Authority's taking fee simple title to Parcels Nos. 2 and 5 and granting perpetual easements to Parcels Nos. 3 and 4 did not operate to vest the Canal Authority with such a right to flood Parcel No. 1 as to entitle it to be compensated where there was no way to determine what factors went into the state jury's verdict since five elements of severance damages had been presented to the jury for its consideration and the compensation award fixed a whole sum only. The Fifth Circuit reversed with directions to grant to Ocala the entire award of $1,093,316.50 plus interest. See United States v. 2997.06 Acres of Land, 471 F.2d 320 (5th Cir.1972).
Thereafter, in March, 1972, Ocala filed its second amended complaint against the Canal Authority in the Duval County case discussed above (Case # 70-2880). Its purpose was to recover damages resulting from the Canal Authority's having abandoned its prior state action to condemn appellee's land and having prevailed upon the Federal Government to institute suit to condemn Parcel No. 1. In 1973 the Duval County Circuit Court entered a judgment adverse to Ocala but made a finding that appellee would be entitled to $400,000.00 as reasonable attorney's fees and $33,561.00 as costs expended in the federal litigation in the event its judgment was subsequently reversed. On appeal, the First District Court of Appeal reversed and remanded, holding, based upon constitutional and statutory grounds,[2] that where the Canal Authority, with power to condemn private property, abandoned its state proceeding and prevailed upon the U.S. Army Corps of Engineers to resort to federal condemnation, in which the landowner (Ocala Manufacturing) could not recover costs and attorney's fees, the Canal Authority was liable to the landowner for damages measured by attorney's fees and costs which would have been allowed in a state proceeding. In its decision the First District Court of Appeal also denied Ocala's petition for attorney's fees in the appellate court but charged the costs of the appeal to the Authority. It is this opinion, reported at 301 So.2d 495, which we have before us for review.
In our consideration of the case we believe it relevant to note the compensation which was actually received by the appellee in connection with Parcel No. 1, the approximately 3000 acres situate in Marion County, Florida, which has engendered so much litigation. One of five parcels which were the subject of the suit, Parcel No. 1 was dismissed from the condemnation suit then pending in the Circuit Court for Marion County after the trial judge made a ruling which prevented appellant from acquiring fee simple title to the parcel. Notwithstanding the parcel's dismissal from the suit, its severance damage was taken *324 into consideration by the jury. Appellee's high testimony of the aggregate value of Parcels Nos. 2, 3, 4, and 5 was $163,691.00. The jury verdict was $573,292.00. Although not pinpointed, some portion of the $309,601.00 difference was attributable to severance damage to Parcel No. 1. This was recognized by the United States Court of Appeals for the Fifth Circuit in United States v. 2997.06 Acres of Land, supra, wherein Judge Simpson stated at page 336:
"The Canal Authority's arguments that it dismissed Parcel # 1 from its state condemnation action (with subsequent resort to the power of the United States to obtain fee simple title) to minimize delays in the completion of the canal undertaking and that the award of the entire federal condemnation judgment to the landowner would constitute an undeserved windfall are on their face persuasive... . The possibility that Ocala Manufacturing may receive double compensation for a portion of its interest in Tract 1201 [Parcel # 1] is the price the Canal Authority must bear for dragging the federal judiciary into this jurisprudential quagmire. No completely satisfactory result can be achieved. We adopt the least objectionable."
In connection with the circuit court condemnation suit appellee was awarded $15,000.00 in attorney's fees as to dismissed Parcel No. 1. This order was appealed to the District Court of Appeal, First District, where it was reversed. 253 So.2d 495. On remand, the circuit judge awarded appellee attorney's fees in the sum of $58,750.00 attributable to Parcel No. 1. At the conclusion of the appellate proceedings in the United States Court of Appeals for the Fifth Circuit, the cause was remanded to the United States District Court with directions to enter judgment in favor of appellee in the amount of $1,093,316.50 plus interest as provided by law, as the award to appellee for condemnation of the fee simple title to Parcel No. 1. It should be noted that the rule with respect to payment of a landowner's attorney's fees and costs differs under Florida and federal condemnation law. Accordingly, the matter is treated differently in the instructions by the court to the jury. In a Florida state court suit, the jury is specifically directed not to consider the matter of the landowner's costs and expenses, including attorney's fees, in that the condemning agency is required to pay fees in addition to the jury award of just compensation.[3] No such instruction is given in federal condemnation cases, a fact which makes it possible for a jury in such a case, presumably, to take such fees and costs into consideration in rendering its verdict.
In assessing the proposition, postulated by the District Court of Appeal in the opinion under review, that the appellant violated it statutory authority in seeking the aid of the United States in acquiring fee simple title to Parcel No. 1, we must consider a number of statutory provisions. Appellant, as local sponsor for the Cross-Florida Barge Canal project, was bound by federal law applicable to the project. United States v. 2997.06 Acres of Land, supra, at 322-324. As local sponsor, the Canal Authority was contractually bound to furnish, without cost to the United States, all land interests required by the Secretary of the Army (U.S. Army Corps of Engineers) for the project. See Section 104 of Public Law 86-645, July 14, 1960, 74 Stat. 480, 484-5. To comply with federally imposed conditions for local sponsorship, the Florida Legislature enacted Chapter 374, Florida Statutes, which created the Canal Authority and gave it the authority to function as local sponsor for the project. Section 374.051(1)(a), Florida Statutes, authorized the construction of the canal and stipulated, inter alia, that "... such canal shall be constructed along such route, and to be of such size, dimensions, specifications, kind or type as may be approved by the department of the *325 army or other appropriate department or agency of the United States." By subsection 374.051(1)(h), Florida Statutes, appellant was authorized "[t]o do any and all things necessary and incur and pay any and all expenditures necessary, convenient or proper in the acquisition, construction, operation and control of said canal ..." (emphasis supplied). The authority of the appellant to contract was provided in Section 374.161, Florida Statutes, as follows:
"Contracts. The corporation shall have the power and authority to enter into any and all contracts necessary or convenient to the exercise of any or all of the powers herein and hereby granted, including contracts covering periods of time longer than the terms of office of the members of the board of directors making such contracts and shall also have the power and authority to contract with the United States or any appropriate department or agency thereof for the construction, operation or control of said canal or any portion thereof." (Emphasis supplied)
Section 374.171, Florida Statutes, provides in pertinent part:
"In the event that the United States should decide to undertake the construction of said canal across Florida ... the board of directors of the corporation is authorized, upon such terms and in such manner as said board shall deem proper, to assign, transfer and convey to the United States, . .. such assets, ... of the corporation, ... as may be necessary or desirable, in said board's judgment, to accomplish such purposes."
As a guide to the construction and interpretation of the above quoted authority the Legislature memorialized its intent in the following manner:
"374.181 Liberal construction of act. It is intended that the provisions of this act shall be liberally construed for accomplishing the work authorized and provided for or intended to be provided for by this act, and where strict construction would result in the defeat of the accomplishment of any part of the work authorized by this act, and a liberal construction would permit or assist in the accomplishment thereof, the liberal construction shall be chosen." (Emphasis supplied)
In accord with the foregoing statutory mandate and authority, appellant entered into an agreement with the United States through the U.S. Army Corps of Engineers by which it accepted the obligations to provide without cost to the United States the lands, easements and rights-of-way required by the U.S. Army Corps of Engineers for the construction of the canal by the Corps. See United States v. 2997.06 Acres of Land, supra, at 322-24. It was under this contractual obligation that the U.S. Army Corps of Engineers required the Canal Authority to acquire the fee simple title to the lands comprising Parcel No. 1. When appellant was frustrated in this attempt by the trial court's ruling in the Marion County condemnation proceedings, the U.S. Army Corps of Engineers was so advised but maintained its requirement for fee simple title to the parcel. As the Canal Authority was unable to perform its contractual obligation to furnish fee simple title to Parcel No. 1, the Attorney General of the United States, admittedly at the request of the appellant, invoked the provisions of Title 33 U.S.C. § 593 by filing a suit to condemn Parcel No. 1 in the United States District Court. Title 33 U.S.C. § 593 provides:
"Condemnation of land in aid of State or State agency.
"Whenever any State, or any reclamation, flood control or drainage district, or other public agency created by any State, shall undertake to secure any land *326 or easement therein, needed in connection with a work of river and harbor improvement duly authorized by Congress, for the purpose of conveying the same to the United States free of cost, and shall be unable for any reason to obtain the same by purchase and acquire a valid title thereto, the Secretary of the Army may, in his discretion, cause proceedings to be instituted in the name of the United States for the acquirement by condemnation of said land or easement, and it shall be the duty of the Attorney General of the United States to institute and conduct such proceedings upon the request of the Secretary of the Army, Provided, That all expenses of said proceedings and any award that may be made thereunder shall be paid by such State, or reclamation, flood control or drainage district, or other public agency as aforesaid, to secure which payment the Secretary of the Army may require such State, or reclamation, flood control or drainage district, or other public agency as aforesaid, to execute a proper bond in such amount as he may deem necessary before said proceedings are commenced." (Emphasis supplied)
It would appear, then, that the Canal Authority only sought the aid of condemnation by federal authorities when it found itself between the proverbial "rock and a hard place". Mention is made in both United States v. 2997.06 Acres of Land, supra, and in the First District Court of Appeal opinion now before us that the Canal Authority failed to seek review of the circuit court's ruling in the original condemnation proceeding and that this was somehow tantamount to a design to deprive the appellee of its "constitutionally protected" right to recover attorney's fees and costs. However, the following passage from its opinion makes clear that the United States Court of Appeals for the Fifth Circuit recognized the probable cause for enlisting the assistance of the Federal Government in securing fee simple title to Parcel No. 1:
"... As noted at the beginning of this opinion, this unfortunate situation would not have arisen had the Canal Authority pursued its appellate remedies following the state court's refusal to approve the taking of fee simple title to Parcel #1. The Canal Authority, probably to avoid the delays expected in the Florida appellate courts, or for some other reason, opted instead to enlist the assistance of the United States Army Corps of Engineers in securing fee simple title to the Eureka Pool property, Parcel # 1...." (Emphasis supplied)
One can just as rationally conclude that the Canal Authority acted via the federal condemnation suit in an attempt to comply expeditiously with the requirements of the Federal Government and thereby advance completion of the project. Such intent and action by a state agency are not altogether undesirable.
Accordingly, we conclude that the Canal Authority acted within the spirit and letter of the legislative mandate contained in Chapter 374, Florida Statutes. We do not perceive that Article X, Section 6 of the Constitution of Florida mandated that appellant proceed pursuant to the eminent domain authority conferred by Section 374.071, Florida Statutes, in acquiring property necessary to construct and complete the joint federal-state project. In our view Chapter 374, Florida Statutes, created no vested right in appellee to require the Canal Authority to acquire the land necessary to the accomplishment of its objective through proceedings established by Chapter 73, Florida Statutes.
Even assuming, arguendo, that appellant lacked the statutory authority to proceed as it did, this case still lacks the elements of a cause of action. The District Court of Appeal characterizes the instant *327 case as "a cause of action for damages". Certainly the second amended complaint does not state a cause of action for damages in contract. Therefore, it can only be assumed that the appellate court concluded that it was an action for damages in tort. The only allegations in the second amended complaint which would support such a cause of action are characterizations that the actions of the appellant in seeking the aid of the Federal Government were "illegal and unlawful, contrary to Florida Statutes 374.071 and 374.501(1)(b)"; that the institution of the condemnation suit in the United States District Court in the name of the United States was "illegal and a subterfuge"; and that the appellant "prevailed" upon the United States of America to file the proceedings in the United States District Court. The only category of tort known to the writer which could fit within such allegations is that of fraud and deceit. As pleaded, it is doubtful that the allegations would satisfy the requirement that fraud be pleaded with particularity. See Rule 1.120(b), Fla.R.Civ.P.; West Virginia Hotel Corp. v. W.C. Foster Co., 101 Fla. 1147, 132 So. 842 (1931). Apart from the sufficiency of the allegations, the record in the instant case is devoid of that quality of evidence necessary to establish fraud on the part of appellant. It is rudimentary that proof of fraud must be by clear and convincing evidence. Middleton v. Plantation Homes, 71 So.2d 503 (Fla. 1954); Graessle v. Schultz, 90 So.2d 37 (Fla. 1956). Although the gravamen of the complaint appears to be that representatives of the appellant and the United States Government conspired to work a fraud upon the appellee, there is no evidence in the record of any such conspiracy. The Amended Final Judgment in the instant case makes a finding that appellant "prevailed" upon the United States of America to file a proceeding in eminent domain in the United States District Court, Middle District of Florida, Ocala Division, but such a finding is too ambiguous to satisfy the appellee's burden of establishing misconduct by clear and convincing evidence.
Accordingly,
The decision of the District Court of Appeal is reversed, with instructions to remand to the trial court for reinstatment of the Amended Final Judgment.
It is so ordered.
OVERTON, C.J., and ENGLAND, J. and MOORE, Circuit Court Judge, concur.
BOYD, J., dissents with an opinion.
ROBERTS and ADKINS, JJ., dissent and concur with BOYD, J.
BOYD, Justice (dissenting).
I respectfully dissent and would adopt the decision of the District Court of Appeal, First District, herein reviewed. Under the circumstances, constitutional and statutory grounds referred to in the District Court decision require payment to appellee of a just amount expended for costs and attorneys' fees. The Canal Authority achieved indirectly through Federal condemnation proceedings what it perceived it could not through State proceedings. Certainly the spirit and, in my opinion, the letter of the law stated in the District Court decision should require payment to appellee of its actual losses sustained in fees and costs resulting from the Canal Authority's circuitous methods.
ROBERTS and ADKINS, JJ., concur.
NOTES
[1] The circuit court also awarded various fees to the landowner in the proceedings, from which the Canal Authority appealed to the First District Court of Appeal. 253 So.2d 495 (1st D.C.A.Fla. 1971), cert. denied Fla., 259 So.2d 715. The First District Court of Appeal affirmed in part and reversed in part, holding (1) that awards of a $5,000 fee for Ocala's appraiser who did not testify and a $60,000 attorney's fee in a case involving four parcels of land were proper; and (2) that, where attorneys spent 662 hours in confererences, research and court time regarding an eminent domain proceeding involving a parcel having benefit to Ocala in excess of $400,000 and where other attorneys testified that reasonable fees would have been $50,000, $52,650 and $63,600, the award of $15,000 attorney's fee after the parcel was dismissed from the proceeding was grossly inadequate.
[2] Art. X, § 6, Fla. Const.; Fla. Stat. §§ 374.071-.161.
[3] Fla. Stat. § 73.091.