HENDRY, Judge.
By this appeal, we review the order of the trial court denying appellants’ petition for revocation of the order admitting will to probate.
The decedent, Agnes V. Robertson, a ninety-year old widow at the time of death in 1975, by provisions of her last will and testament left the bulk of her estate to her granddaughter, appellee herein — leaving nothing to her two grandsons, appellants. In July of 1975 the Circuit Court of Dade County, Probate Division, ordered the subject will and codicil to be admitted to probate. In December of that year the appellants-grandsons filed their petition seeking revocation of the court’s order. After trial was had, the court entered its order affirming and ratifying in all respects its previous order admitting said will and codicil to probate, and affirming and ratifying the previous issuance of Letters Testamentary to appellee.
On appeal, the grandsons' primary and crucial contention is that the trial court erred in its finding that the presumption of undue influence was not raised. The trial court made the following findings of fact and conclusions of law, as stated in pertinent part in its order now under review:
“The Court finds:
“1. The parties stipulated that the Last Will and Testament of Agnes V. Robertson dated the 7th day of October, 1974, and the Codicil thereto dated the 26th day of June, 1975, were executed by the decedent in accordance with the laws of the State of Florida.
“2. At the time of the execution of the Will and the Codicil thereto, the decedent was a ninety (90) year old widow whose children, a son and a daughter, had predeceased her. The petitioning contestants are the decedent’s grandsons, the *1140 children of her deceased son. The respondent-proponent is the decedent’s granddaughter, the child of her deceased daughter. The grandsons are and at all material times were residents of California. The granddaughter is and at all material times was a resident of Miami, Florida. Of her three (3) grandchildren, the decedent was closest to her granddaughter, Mrs. Gallagher. When Mrs. Gallagher was a child, she lived across the street from her grandmother and eventually moved into her grandmother’s home. Thereafter and up to the time of Mrs. Gallagher’s second marriage to a man her grandmother did not approve of, the two were frequent visitors in each other’s home. The decedent provided all of Mrs. Gallagher’s education, and gave her gifts of expensive homes, automobiles and jewelry. Although the decedent had executed a Will in 1968 which made provision for all three (3) grandchildren, she became unhappy in 1974 with her grandsons and decided to leave everything she could to Mrs. Gallagher, whose own mother had left nothing of her estate to Mrs. Gallagher.
“3. Beginning in 1971, the decedent, who was then a resident of Shamokin, Pennsylvania, spent most of her time in Miami, Florida. In May of 1974, she became seriously ill and was hospitalized from May until the middle of July, 1974. For a period of time during this hospitalization, she was near death. However, she made a remarkable recovery considering her age and frail physique and upon her discharge from the hospital, she moved into her granddaughter’s condominium apartment. Although the decedent was physically frail after her discharge from the hospital in July, she nevertheless retained her strong will and mental alertness up to and including the execution of her Will on the 7th day of October, 1974, and the Codicil thereto on the 26th day of June, 1975.
“4. A confidential relationship existed between the granddaughter, Mrs. Gallagher, and the decedent at all times material hereto.
“5. Mrs. Gallagher was not active in procuring the execution of the Last Will and Testament or the Codicil thereto of the decedent. The decedent’s Last Will and Testament and the Codicil thereto were prepared at the decedent’s request by Mr. John C. McKay, Jr., an attorney the decedent had selected. The arrangements for the execution of the Will, which was audio-videotaped, and the Codicil were made by the decedent’s attorney. The decedent’s treating physician was a witness to the execution of the Will by the decedent. The decedent’s mind at the time of the execution of the Will was unimpaired by medication or drugs and she then understood the extent of her estate and the object of her bounty. There is no evidence that she was less competent at the time of the execution of her Codicil. The decedent’s Will and Codicil were kept by Mr. McKay from the date of the execution to the date of death of the decedent and Mrs. Gallagher did not have possession of the Will or the Codicil, nor is there any evidence that she knew the content of the instruments until the death of the decedent. There is no credible evidence that Mrs. Gallagher either directly or indirectly gave instructions to Mr. McKay regarding the preparation of the Will or Codicil of the decedent. There is no credible evidence that Mrs. Gallagher was ever present on any occasion when the decedent expressed a desire to make a Will.
“6. No presumption has been raised that either the Will or the Codicil was prepared or executed as a result of undue influence.
“7. The Court finds from the greater weight of the evidence that the Last Will and Testament of Agnes V. Robertson dated the 7th day of October, 1974, and the Codicil thereto dated the 26th day of June, 1975, were not prepared or executed as a result of undue influence.
“8. There is no credible evidence that the Will and Codicil of the decedent are vague and ambiguous.
*1141 “9. There is no credible evidence that the Codicil was procured by fraudulent misrepresentation of Mrs. Gallagher.
“The Court concludes:
“1. That the petitioners have failed to carry the burden of proof as contestants to the probate of the Last Will and Testament of Agnes V. Robertson dated the 7th day of October, 1974, and the Codicil thereto dated the 26th day of June, 1975, to prove by the greater weight of the evidence that the execution of the said Will and Codicil were procured by Alice Carey Gallagher, the proponent thereof, by undue influence. In Re Carpenter, 253 So.2d 697 (Fla.1971).
“2. That the petitioners have failed to carry the requisite burden of proof that the said Codicil of the decedent was procured by fraudulent misrepresentation of the respondent, ALICE CAREY GALLAGHER. Canal Authority v. Ocala Mfg. Ice & Packing Co., 332 So.2d 321 (Fla.1976).
“3. That the petitioners have failed to carry the burden to demonstrate that there is an ambiguity in either the Will or the Codicil of the decedent, and in the absence of such ambiguity the Court is without power to alter either instrument. Nesbitt v. Eisenberg, 139 So.2d 724 (Fla.App.1962).”
The court stated in its holding In Re Carpenter, 253 So.2d 697 (Fla.1971), appeal after remand, 289 So.2d 410 (Fla. 4th DCA 1974), that § 732.31, Florida Statutes[1] provided that the proponent of a contested will has the burden of proving, prima facie, the formal execution and attestation of the will; when that has been accomplished, the burden of proof then shifts to the contestant to establish facts constituting the grounds upon which revocation is sought. The record shows that the parties stipulated to the execution in compliance with Florida law. Appellants then sought to prove their allegations of undue influence.
The issue under consideration is whether the presumption of undue influence was, in fact, raised. It is well established in Florida that if a substantial beneficiary under a will occupies a confidential relationship with the testator and is active in procuring the contested will, the presumption of undue influence arises. Zinnser v. Gregory, 77 So.2d 611 (Fla.1955). Undue influence must be proved by clear and convincing evidence by the party asserting such. Freedman v. Freedman, 345 So.2d 834 (Fla. 3d DCA 1977). The court stated in Carpenter, supra, at 701, undue influence entails:
“ ‘Active procurement’ and ‘confidential relationship’ [which] are legal concepts operating within a broad sphere of factual situations. Within this sphere, the trier of fact is vested with discretion to determine whether or not the facts show active procurement and/or a confidential relationship. Outside this sphere, the question becomes one to be decided by the trier of law in accord with established rules. The problem posed for our consideration is whether the facts in this case permitted an inference of a confidential relationship and active procurement; if so, we are bound to uphold the finding of the trier of fact; if not, we must conclude that he erred.”
The record in the instant cause clearly reflects that there was a close bond between appellee and the deceased; that the deceased spent most of her last years in Miami living with her granddaughter; and that the deceased had expressed a desire to others to grant power of attorney to the appellee. In the leading case of Quinn v. Phipps, 93 Fla. 805, 113 So. 419, at 421-422 (1927), the court defined the term “confidential relationship” as “ . . .a very broad one [term] . . . The origin of the confidence is immaterial . . . The relation and the duties involved in it need not be legal. It may be moral, social, domestic, or merely personal.”
The evidence presented is sufficient to permit the conclusion of an inference of a confidential relationship between appellee and the deceased. The mere exist *1142 ence of a confidential relationship between the testator and a beneficiary, even though the principal one, does not raise a presumption of undue influence so as to impose the burden upon that beneficiary of establishing that execution of the will was not obtained by undue influence. In re Joiner’s Estate, 156 So.2d 161 (Fla.1963), conformed, 156 So.2d 166 (Fla. 3d DCA 1963) and In re Duke’s Estate, 219 So.2d 124 (Fla. 2d DCA 1969). Furthermore, the record is devoid of any evidence whatsoever which might lead to the inference of “active procurement” on the part of appellee. The court found, inter alia, and the record supports that: (a) the deceased selected the attorney to draft the will; (b) the attorney arranged the execution of the will and the audio-videotaping thereof; (c) decedent’s attending physician witnessed the execution of the will; (d) at the time of execution, decedent understood the extent of the estate and the object of her bounty; (e) the will and codicil were retained by the attorney; (f) the primary beneficiary (appellee) did not have possession of the will or codicil; (g) appellee had no knowledge of the contents of the will and codicil prior to decedent’s death.
We affirm the decision of the trial court. The presumption of undue influence did not arise, since the appellants failed to carry their burden of proof in presenting competent, sufficient evidence to establish appel-lee’s having participated in “active procurement” as to the execution of the will and codicil; without proof that the appellee-pri-mary beneficiary had confidential relationship with testator and was active in the procurement, the presumption does not arise. In re Joiner’s Estate, supra.
Affirmed.

. See recent legislation, The Florida Probate Code, 731.011 et seq., Florida Statutes (1975).