**In the Matter of F & M ENTERPRISES, INC., Debtor.**

**Helen COSTELLO, Plaintiff,**

**v.**

**F & M ENTERPRISES, INC., Defendant.**

**Bankruptcy No. 81–2183.**
**Adv. No. 82–193.**

United States Bankruptcy Court, M.D. Florida, Tampa Division.

March 6, 1986.

See also, Bkrtcy., 29 B.R. 115.

Larry Foyle, Tampa, Fla., for defendant.

Ben Kay, Sarasota, Fla., for plaintiff.

## MEMORANDUM OPINION PURSUANT TO ORDER ON REMAND

ALEXANDER L. PASKAY, Chief Judge.

THIS IS a Chapter 11 case and the matter before this Court is an adversary proceeding instituted by Helen Costello (Costello) against F & M Enterprises (Debtor). The Complaint filed by Ms. Costello sought a determination by this Court that a certain transaction between her and the Debtor was, in fact, a mortgage loan transaction whereby Ms. Costello granted a mortgage to the Debtor and was not a conveyance of title of the subject property. In the alternative, Ms. Costello claimed that the warranty and a quit claim deed executed by her in favor of the Debtor was obtained by fraud, thus, should be declared to be null and void and unenforceable.

In due course the matter was tried, at the conclusion of which this Court entered its Memorandum Opinion and found that Ms. Costello failed to meet her burden of proving by the preponderance of the evidence that both parties intended the transaction to be a mortgage rather than a conveyance.

The Court also found and concluded, concerning her claim of fraud asserted in the alternative, that Ms. Costello failed to establish by clear and convincing evidence that the president of the Debtor intended to deceive her and that she was, in fact, deceived. This Court's conclusion was based on the then prevailing law of this State, enunciated by the Supreme Court in *Canal Authority v. Ocala Manufacturing, Ice and Packing Co.*, 332 So.2d 321 (Fla.1976). This Court entered a final judgment based on the foregoing and dismissed Ms. Costello's Complaint with prejudice.

Ms. Costello, having been aggrieved by this Court's decision, timely filed a Notice of Appeal. In due course, the district court considered the appeal and entered its order on appeal. The district court, while it agreed with this Court's conclusion that the transaction under consideration was, in fact, intended to be a conveyance and not merely a mortgage as contended by Ms. Costello, concluded that in light of the fact that the standard of proof enunciated earlier by the Supreme Court in this State has been expressly overruled by the Supreme Court in *Watson Realty Corp. v. Quinn*, 452 So.2d 568 (Fla.1984). Based on this, the District Court remanded the fraud issue for further consideration by this Court in light of the change of law related to the quantum of proof required to establish fraud.

In *Watson Realty* the Supreme Court held that the plaintiff may prove fraud by the mere preponderance of the evidence rather than by clear and convincing evi-

dence as required previously by *Canal Authority*. Thus, this is the matter before this Court for consideration pursuant to the Order of Remand. Without reciting in detail the previous findings made by this Court and by the district court, it shall suffice to state the following:

There is no question that Ms. Costello never intended to sell her home to the Debtor. The record is more than sufficient to warrant the conclusion that all she wanted was to borrow enough money to save her home which she was about to lose at foreclosure. It is equally clear that Mr. Foster, the president of the Debtor, was willing to obtain the funds needed to pay off the encumberances including the mortgage which was about to be foreclosed, but only on his terms which was to structure the transaction as a sale rather than a mortgage. Of course, this was necessary since the Debtor certainly did not have the funds needed by Ms. Costello, neither did F & M Enterprises, an entity ostensibly acting as a mortgage broker and an entity also controlled by Mr. Foster, the president of the Debtor. While it is true that the Debtor gave an option to Ms. Costello to repurchase the property initially for $68,-000, the fact remains that the warranty deed executed by Ms. Costello effectively vested title in the Debtor to the subject property.

It is clear that Mr. Foster, dealing on behalf of the Debtor, wanted to structure the transaction as a conveyance and obtain the deed to the property so he could borrow the needed funds from Barnett Bank and use the funds to satisfy the outstanding encumberances on the property. Of course, Mr. Foster could accomplish this only by obtaining a warranty deed from Ms. Costello on September 25, 1980 and recording same on the same date and by delaying the recordation of the repurchase agreement until October 22, 1980. This was, of course, necessary because it is highly unlikely that Barnett would have granted the loan if the repurchase agreement appeared on the public records.

While it is true that Ms. Costello certainly knew that the document she signed on September 25, 1980 was a warranty deed, she never intended to sell the property to the Debtor and was never informed that Mr. Foster was going to use the deed executed by her to obtain a mortgage loan from Barnett by using the property as collateral. When she questioned the transaction, she was told repeatedly that "that is the way we are doing business".

The right to repurchase the property granted to Ms. Costello on September 25, 1980 and recorded on October 22, 1980 as an Agreement for Deed was a one year option. At the expiration of the option time Ms. Costello did not have the funds to pay $68,000, the purchase price fixed in the Agreement for Deed, and asked for an extension. As a result of the discussion with Mr. Foster, Ms. Costello executed a "Letter of Understanding" (Plaintiff's Exh. # 9) which acknowledged the respective positions of the parties and the Debtor granted Ms. Costello an additional year to exercise the option to repurchase the property until September, 1982. Pursuant to the terms of the "Letter of Understanding", Ms. Costello agreed to pay $6,600 to the Debtor quarterly and agreed to pay $110,-000 as the full repurchase price prior to the expiration of the second option time. She also executed a quit claim deed in favor of the Debtor pursuant to the "Letter of Understanding" in consideration of the "Repurchase Option" to be granted to Ms. Costello whereby she was supposed to have the right to repurchase the property for $110,000 before September 27, 1982. Of course, the net effect of the quit claim deed executed by Ms. Costello was to extinguish the rights granted to her by the Agreement for Deed and since the promised option was never granted, she effectively lost all rights to her home.

It is noteworthy that the business of the Debtor was to purchase properties at foreclosure for distress prices, repairing and renovating them for the purpose of resale. While the Debtor attempted to make a showing that F & M Enterprises, the general partnership, engaged in the business

of a mortgage broker was a totally separate entity not connected with the Debtor, the evidence is overwhelming that both entities were controlled by Mr. Foster. Both used not only the almost identical name but operated out of the same business premises. As previously noted by this Court, the business practices of the Debtor were conducive to lead easily to misunderstanding even by a fairly sophisticated person, let alone by a non-sophisticated person. Moreover, this Court is now satisfied that the modus operandi of the Debtor was designed to mislead even the person with average sophistication and the conclusion is not unwarranted that the method of operation was purposely designed by Foster to produce precisely this result, that is, to facilitate the acquisition of properties at distress prices. The fact of the matter is there is testimony in this record that the Debtor obtained deeds in the same fashion on two other occasions from one Ms. Wigal and from one Mr. Carroll.

In sum, while Ms. Costello obviously knew the nature of the documents she signed, she never intended to sell her home to the Debtor and agreed to the transaction because it was the only way the Debtor was willing to arrange for the funds needed to save her home. Based on the foregoing, this Court is now satisfied that the proof presented by Ms. Costello met the standard of proof set by the Supreme Court in *Watson Realty*. A separate final judgment will be entered declaring the warranty deed and the quit claim deed to be invalid and unenforceable as one obtained by fraud and restoring the title to the subject property to Ms. Costello.

A separate final judgment will be entered in accordance with the foregoing.