280 So.2d 497 (1973)
In re the ESTATE of Essie Sue YELVINGTON.
Genevieve E. BOWMAN et al., Appellants,
v.
Conrad F. YELVINGTON, Etc., and Nicholas A. Caputo, Appellees.
No. Q-499.
District Court of Appeal of Florida, First District.
July 3, 1973.
Rehearing Denied August 7, 1973.
*498 Dan R. Warren of Judge, Warren & Cass, Daytona Beach, for appellants.
Becks & Becks, Daytona Beach, Nicholas A. Caputo, Holly Hill, and Isham W. Adams, Daytona Beach, for appellees.
JOHNSON, Judge.
This is an appeal from a final judgment denying the petitioner's petition to revoke the probate of one Last Will and for an order admitting another and later Last Will and Testament executed by the deceased.
The first Will executed by Mrs. Essie Sue Yelvington was dated March 15, 1966. The second Will was dated August 13, 1970. The first Will favored one son, Conrad F. Yelvington, and named him as executor of the estate. This Will was filed for probate and admitted to probate about 4 days after the death of the testatrix, to wit: February 26, 1971. The last Will was filed for probate on March 2, 1971. The petition of revocation was filed, which was denied, hence this appeal.
In the final judgment, the probate court made a finding of facts from which he determined that the last Will was executed according to law, but that the evidence also established that the petitioner and one of her sisters and a brother were substantial beneficiaries under the purported will and occupied a confidential relationship to the decedent and were active in the procurement of the Will, thereby raising a presumption of undue influence on the testatrix, and that since no reasonable explanation for the active role of these named sisters and brother had been brought forward, that the petition should be denied.
We have read the entire record and we find from the testimony of the two doctors and the registered nurse, who were the witnesses to this last Will, that the decedent was very capable mentally, where she and they as witnesses, executed the will and that she knew what she was doing. The nurse testified that the decedent had been worried about a former will and that after she had executed the new will, she was better satisfied. The lawyer who prepared the will testified that he talked to the testatrix several weeks after the Will was prepared and she had told him it was perfect, in answer to his question of whether or not the will was okay. It is to be noted that this latter conversation between the decedent and the lawyer took place in the lawyer's office in DeLand, when they were alone. In this testimony, the lawyer told of the decedent asking him about his grandfather and his old home place. At this same time, this lawyer, at the decedent's request, prepared a deed purporting to be to the old homeplace, the decedent making the announcement that she wanted the old place preserved as a home for the unmarried children.
This testimony convinces us that the decedent was not under undue influence from any of her children. The said Will devised her property equally between her children. The influence exerted by the children is none other than what would have been expected from children who cared for their mother. We do not agree with the probate court that the activity of the petitioner nor her sisters and brother was such as to require them to come forth with an explanation of their role in the decedent's affairs.
*499 In the answer to the petition, filed by Conrad Yelvington, individually and as Executor of the Last Will and Testament of Essie Sue Yelvington, it is alleged as follows:
"1. On the 15th day of March, 1966, Essie Sue Yelvington, deceased, pursuant to an agreement with Conrad Yelvington and for a valuable consideration did make and publish her Last Will and Testament which among other things devised and bequeathed to Conrad Yelvington the following described real property ..."
Also in the third paragraph of said answer, it is alleged as follows:
"3. That Conrad Yelvington pursuant to said agreement with Essie Sue Yelvington, deceased, did enter into possession of the aforedescribed real property and with the knowledge, consent and acquiescence of the said Essie Sue Yelvington, deceased, the petitioner, Genevieve E. Bowman, and all other heirs of said deceased, construct, erect and place on the aforedescribed real property valuable improvements the cost of which exceeded the sum of $45,000.00."
The same attorney who prepared the March 15, 1966 Will for Mrs. Essie Sue Yelvington is now of counsel for Conrad Yelvington. Assuming as true the allegations in paragraph one of the answer, supra, it would appear to us that more undue influence was exerted on the testatrix in the first Will than on the last. Conrad Yelvington seemed to treat the devise in the will, although the testatrix was still alive, as a conveyance. He alleges that he took possession of a certain parcel of property with the consent and acquiescence of the decedent and his brothers and sisters, upon which he had constructed a valuable improvement.
While Conrad Yelvington may have been ill-advised as to his rights, it does not change the law that a provision in a will is subject to change at any time the maker of the will wishes, while alive. The proposed devise contained in a will conveys no interest to the devisee so long as the testatrix is alive. While the fact that the other heirs of the testatrix knew of and therefore could have acquiesced in the improvement he made, might give rise to some form of unjust enrichment proceeding against the other heirs, it does not convey title prior to probate of a valid will.
From the evidence in this case we find, and so hold, that the probate court was in error in not granting the petition to revoke and in refusing to admit to probate the August 13, 1970 Will of Mrs. Yelvington.
The Supreme Court of Florida in In Re Estate of Carpenter, 253 So.2d 697, 704 (1971) said:
"Our conclusion ... that a properly executed will should be given effect unless it clearly appears that the free use and exercise of the testator's sound mind in executing his will was in fact prevented by deception, undue influence, or other means... ."
In the case sub judice, there is a scarce amount of any of the criteria involving active procurement in the execution of the last Will in question. The testimony submitted told of the tender loving care bestowed upon the testatrix by her children, which we think is enough explanation of the role of the beneficiaries in the affairs of the decedent to rebut the assumption of undue influence. The fact that three of the named children, in addition to Conrad Yelvington, were equal beneficiaries with all of the children of the decedent rebuts that these three were "substantial" beneficiaries.
For the reasons pointed above, and on authority of In Re Estate of Carpenter, supra, the final judgment is reversed and the case remanded to the trial court to revoke the first Will and to admit to probate the latter Will.
Reversed and remanded.
*500 RAWLS, Acting C.J., concurs.
NESBITT, Associate Judge, dissents.
NESBITT, Associate Judge (dissenting).
I dissent. In my view the case should be reversed and remanded to the trial court for a determination on the issue of undue influence in accordance with the greater weight of the evidence.
At trial appellants as proponents of the 1970 will established the formal execution and attestation thereof as required by Florida Statute 732.31, F.S.A. The evidence produced by appellants went far beyond the requirements of Section 732.31 supra. That evidence which is fairly recited in Judge Johnson's opinion, if believed by the trier of fact, tended to demonstrate the capacity, ability and alertness of the testatrix at the time of execution of the 1970 will. Appellee contestants relied exclusively upon cross-examination of the proponents witnesses to develop the foundation facts in support of their affirmative defense of undue influence. That evidence showed the challenged will was executed while the testatrix was hospitalized in August, 1970 which was her fourth hospital admittance during that calendar year. The testatrix was eighty-one (81) years of age. She was in a generally degenerative condition and medicated in response to many needs. Her daughters lived with her and spent considerable time with her in the hospital. It was during the August hospitalization that she requested the assistance of her son Jesse in the preparation of a will. Jesse selected the drafting attorney and instructed him as to its contents. That will was received by one of the daughters who transmitted it to her mother in the hospital and was present during its execution. The day following execution of the will one of the daughters drove the testatrix to a parking lot adjacent to the drafting attorney's office. At that time she revoked a previous power-of-attorney in favor of son Conrad and executed a similar new power in favor of her daughter, Genevieve. The following December she executed a deed to her homeplace to Genevieve. During the same month the testatrix was re-admitted to the hospital suffering from pneumonia. The foregoing evidence, if accepted by the trier of fact, as it evidently was, was sufficient to create a presumption of undue influence and shift the burden to the proponents to come with a reasonable explanation for their active participation in the affairs of the testatrix. In Re Estate of Carpenter, Fla. 1971, 253 So.2d 697. When the proponents rested their case in chief the contestants similarly rested relying solely upon the evidence they adduced in cross-examination of the proponents' witnesses. The proponents offered no rebuttal testimony. In this posture of producing evidence contestants evidently persuaded the trial court that the case should be determined upon presumption of undue influence created since the judgment appealed from recites that the proponents "have not come forward with an explanation" as to their participation in the testatrix's affairs. There was no need for the proponents to do so. The evidence they had adduced during their case in chief dispelled the presumption that arose from the evidence adduced by the contestants during cross-examination. As a result of neither parties' failure to object to the others testimony the evidence adduced was entitled to all probative force and effect normally accorded such evidence. Gracey v. Seaboard Air Line Ry., 1915, 69 Fla. 301, 68 So. 722. At that point the presumption was relegated to the dignity of a permissive inference. In that posture the trial court's resolution of the matter should have been based upon a consideration of all of the evidence adduced. Gulf Heating Co. v. Iowa Mutual Ins. Co., Fla. 1967, 193 So.2d 4. Since the judgment appealed from denied the questioned will to probate solely on the basis of the presumption rather than upon the greater weight of the evidence the judgment appealed from should be reversed and remanded to the trial court for such determination and in conformity with In Re Estate of Carpenter, supra.