GRIMES, Judge.
This is an appeal from a judgment entered upon a directed verdict for the plaintiff.
The plaintiff/appellee (bank) as executor of the Estate of Nellie Meneely filed a complaint against the defendant/appellant (Mrs. Johnson) seeking to set aside certain checks which Mrs. Meneely had written to Mrs. Johnson before her death. Mrs. Johnson counterclaimed for the proceeds of a further $3,000 check upon which the bank *932 had stopped payment. Upon the request of Mrs. Johnson, the matter came on for jury trial. At the conclusion of testimony, both sides moved for directed verdict. The court denied Mrs. Johnson’s motion and reserved ruling on the bank’s motion. The jury returned a verdict for Mrs. Johnson on the bank’s claim and awarded her the $3,000 on her counterclaim. Thereafter, the court entered an order granting the bank’s motion for directed verdict, the effect of which was to render judgment for the plaintiff in the approximate sum of $160,000, subject to the offset of an amount that the defendant was to be permitted to prove at a later hearing which would represent the value of unpaid services provided to the decedent prior to her death.
The evidence reflected that Mrs. Meneely was 96 years of age when she died on October 12,1973. She and her husband had resided in Sarasota for many years. After her husband passed away in 1966, she lived by herself. While she seldom went out, she did receive visitors from time to time. She talked with others on the telephone daily. Her physical health declined during her later years, and she could only walk with the aid of a walker. There was no evidence of mental incompetence, though she became more forgetful in later years. One witness said that Mrs. Meneely had a dominant personality and was always very strong willed.
Mrs. Johnson went to work for the Me-neelys in 1961. Both Mr. and Mrs. Meneely were fond of Mrs. Johnson, and Mr. Meneely had given her gifts before he died. In the latter years, Mrs. Johnson worked for Mrs. Meneely from five to seven days each week. A neighbor described their relationship as follows:
“Q What were Maude’s duties, if you know? What did she do around the house or what did she do for Mrs. Meneely?
A She did everything. And what I mean is physically she took care of her and she took care of the house as far as I could see. She did her shopping. She was her companion. She was her nurse.
Q Was it a difficult job?
A Nobody, but nobody, I don’t think, could have put up with it other than Maude. That’s my personal opinion.
Q Did you ever see any indication of dominance of Mrs. Meneely by Maude Johnson when you were over visiting?
A Would you explain that? You mean Maude dominating Mrs. Meneely?
Q That’s correct.
A No, sir.”
Mrs. Johnson testified that she used the proceeds of the checks to buy a new house and to meet other personal expenses.
The bank found no bank statements or cancelled checks among Mrs. Meneely’s possessions after her death. By checking its microfilms, the bank learned that from 1970 to 1973 there were checks drawn on Mrs. Meneely’s bank account payable to Mrs. Johnson’s order in the sum of $163,650.68. Some of the checks were marked “personal household,” “loan,” and “Christmas.” The checks appeared to have been written by someone other than Mrs. Meneely but there was no suggestion of forgery with respect to Mrs. Meneely’s signature. The practice of having someone else write her checks was apparently not new since a neighbor who used to fill out her tax returns had done this until 1971. At the time of her death, Mrs. Meneely still had $120,000 in savings. Her closest living relative at the time of her death was a niece in Texas.
There was no direct evidence of undue influence. The bank contended that Mrs. Meneely and Mrs. Johnson occupied a confidential relationship and that Mrs. Johnson had failed to meet the legal burden thereby placed upon her. In Majorana v. Constantine, 318 So.2d 185 (Fla.2d DCA 1975), this court held that where the donee of a gift is shown to have been in a confidential relationship with the donor, the donee then has the burden of coming forward with a reasonable explanation for his active role in the donor’s affair but is not obligated to disprove undue influence. Following the principle laid down by our supreme court *933 with respect to wills in In re Estate of Carpenter, 253 So.2d 697 (Fla.1971), we held that as in the case of other presumptions, the burden of proof remained with the party upon whom it rested in the first place.
Thus, the underlying issues in this case were whether a confidential relationship existed, and if so, whether Mrs. Johnson met the burden of giving a reasonable explanation for her active role in Mrs. Me-neely’s affairs. The court properly instructed the jury on both of these issues, and the jury returned a verdict in favor of Mrs. Johnson. Since the verdict was a general verdict, we cannot tell how the jury resolved either issue, but it would have been necessary for the bank to prevail on both issues in order to obtain a favorable verdict. While there was clearly enough evidence to support the conclusion that a confidential relationship did exist, it cannot be said upon this record as a matter of law that the jury would not have been entitled to reach a contrary conclusion. Moreover, there was competent substantial evidence explaining Mrs. Johnson’s active role in Mrs. Meneely’s affairs. Mrs. Johnson was working for her on a full-time basis and was necessarily caring for her physical needs as well as doing the ordinary housekeeping chores. While (presumably because of the Dead Man’s Statute) neither party specifically explored the transactions reflected by the checks, under the rationale of Carpenter and Majorana, the burden was not upon Mrs. Johnson to do so in order for her to prevail.
Upon proper instructions, the jury returned a verdict which is supported by competent substantial evidence. Under these circumstances, the court is not permitted to substitute its judgment for that of the jury. The order directing the verdict for the plaintiff is hereby reversed with directions to enter a judgment in accordance with the verdict.
HOBSON, Acting C. J., and RYDER, J., concur.