PER CURIAM.
In the first appearance of this cause before this court (Lee v. Patton, 342 So.2d 542) we were concerned with the ruling of the trial judge setting forth the burden of a donee of an inter vivos gift to rebut a presumption of undue influence which arose from such gift. Based on In re Estate of Carpenter, 253 So.2d 697 (Fla.1971) and Majorana v. Constantine, 318 So.2d 185 (Fla.2d DCA 1975) we held:
“ . . . that the donee’s burden of rebutting a properly raised presumption of undue influence relating to an inter vivos gift is only such as to come forward with a reasonable explanation of the do-nee’s active role in the donor’s affairs, and specifically in the preparation of the gift transfer instrument.”
We further held that the donee is not required to show the gift was freely and voluntarily made with a full understanding of the import and effect thereof and that the gift represented the wish and desire of the donor as the lower court required of the donee.
This court further stated:
“ . . . [T]he judgment below is reversed and the cause remanded to the lower court to apply the Carpenter bur *520 den of proof principles on the undue influence issue. A new trial will not be necessary. In so doing, we express no opinion as to whether undue influence has or has not been established by this record.”
The trial judge entered a Final Decree On Mandate making comprehensive and extensive findings of fact and setting forth his conclusions of law.[1]
Pertinent portions of the Final Decree On Mandate are set forth as follows:
“1. WINIFRED STUART LEE, a longtime resident of Dade County, Florida, died May 24, 1974 at the age of 83 years.
* * * * * *
“2. In the year of decedent’s demise she had been in the hospital from January 31, 1974 to February 19, 1974, and again from April 19, 1974 until her death. Though she had been in failing health since the latter part of 1973, her physical and mental condition deteriorated from January of 1974 onward so that she was from that point totally bedridden, hard of hearing, had poor eyesight, was from time to time confused and disoriented, suffered periodic hallucinations and exhibited numerous symptoms of disability, together with her physical ailments. She was almost totally dependent upon her housekeeper and others to care for her and administer to her necessities of life.
“The decedent had become increasingly concerned about her inability to properly supervise and manage her finances due to her poor health, and with the assistance of her attorneys of long-standing who had represented her and her deceased husband for over 20 years (the Patton law firm), a custodian agreement dated October 25, 1973 with defendant, CITY NATIONAL BANK OF MIAMI, was entered into whereby her personal property in the nature of marketable securities and cash valued at over $100,-000 were managed by the custodian under written agreement. Notwithstanding the custodian agreement, Mrs. Lee retained certain personal checking accounts upon which she could write her own checks in payment of her current obligations and necessities. After the opening of the custodian account, the decedent was hospitalized in December 1973 and again in January of 1974, and her physical and mental condition deteriorated to the point that current bills were unpaid. That the salary of her housekeeper, MARY NOETHEN, was not only unpaid, but the housekeeper found it necessary to advance her own funds for the purchase of food and the payment of immediate expenses. Mail was unopened and in general there was a total inability on the part of Mrs. Lee to manage her affairs. After conferences with the housekeeper and Mrs. Lee regarding this unfortunate situation, and in order to assist in the performance of these everyday tasks for her which were not encompassed within the custodian agency agreement, Mrs. Lee, on March 13, 1974, executed a power of attorney to DONALD W. STOBS, Jr., of the ‘Patton’ law firm for the purpose of enabling him to assist her in the management of her affairs and to keep current the household obligations and immediate necessities of Mrs. Lee. Shortly after the execution of the power of attorney, the personal checking account and banking account of Mrs. Lee were terminated and arrangements made with the custodian bank to take over those funds and for the bank to pay obligations as approved and requested by Mr. Stobs, the attorney-in-fact.
“4. For a period of approximately one and one-half to two years prior to her demise, the decedent had a live-in housekeeper, MARY NOETHEN, who looked after her, performed the required household tasks and was employed on a salary basis. As her health deteriorated, she relied upon MARY NOETHEN increasingly to do everything for her and administer to her needs as a full-time companion and nurse. MARY NOETHEN, during the latter part of 1973 and thereafter, demanded salary raises due to the increase in her duties as the health of *521 the decedent failed. These salary demands included statements that she would leave the decedent alone without anyone to care for her unless they were met. She was also being thwarted in her demands for unpaid salary and for reimbursement of expenses she had incurred on behalf of the decedent. Mrs. Noethen became increasingly concerned as first the custodian agency agreement, and then the “Stobs” power of attorney indicated to her that decedent was losing control of her property, and especially was this true when the personal bank accounts of Mrs. Lee were closed and she lost her privilege of writing her own checks on her personal bank account. All of this concern was expressed to Mrs. Lee and when Mrs. Lee realized that her bank accounts had been closed and that her entire financial affairs had been placed in the hands of the bank and Mr. Stobs of the law firm, she became extremely agitated and requested Mrs. Noethen to write a letter to her step-son, ROBERT EMMETT LEE, the son of her deceased husband, asking him to come to Florida from his home in Illinois to discuss with her her personal affairs and assist her in regaining personal control of her property.
“5. The letter to ROBERT EMMETT LEE in Illinois under date of 15 March 1974 was written by MARY NOETHEN and signed by WINIFRED LEE. It requested him to come to Florida at his earliest convenience to discuss Mrs. Lee’s affairs.
“The defendant, ROBERT EMMETT LEE, was the son of WARREN CUBBON LEE, to whom WINIFRED STUART LEE became married in 1955. At the time of this marriage, Mr. Lee was a grown man and was and now is a practicing attorney at law in Illinois. After the marriage of WARREN and WINIFRED LEE, there was little or no contact over the ensuing 20 years between WINIFRED STUART LEE and her step-son, ROBERT EMMETT LEE, other than two visits. The first such visit was in 1957 to attend the funeral of Robert’s father, WARREN CUBBON LEE, in Miami, Florida; and the second such visit was in March 1974 which gave rise to the incidents and transactions at issue in this law suit.
“The Court finds from all the evidence presented in this cause that WINIFRED STUART LEE, the decedent, being agitated and concerned over having relinquished personal control of her financial affairs and having no husband or child to counsel with her, and knowing that her step-son, ROBERT EMMETT LEE, was an attorney at law, she requested his coming to Miami, Florida to assist her in remedying her concerns and to regain personal control of her property. The defendant, ROBERT EMMETT LEE, arrived in Miami on March 21, 1974. He left the City of Miami to return to Illinois on March 28,1974. In that period of time, and as a direct result of his actions as hereinafter enumerated, rather than the decedent regaining control over her property, she was, in effect, left with no property at all due to the gift transfers made by her to the defendants, ROBERT EMMETT LEE and his wife, at Mr. Lee’s undertaking after his arrival. The deed to her home-place, the assignment of all of her personal property of every kind and character, and the power of attorney obtained by Mr. Lee from her, notwithstanding that they were joint with right of survivorship, left WINIFRED STUART LEE, the decedent, in a completely penniless condition dependent entirely upon the willingness of her stepson through his ownership of all of her personal estate and the power of attorney to provide for her necessities of life, her nursing care, and even the cost or expense of her last illness and burial upon her death.
“6. The following are some of the facts and events which took place during the March 21-28, 1974 visit by ROBERT EMMETT LEE:
“(a) He stayed at decedent’s residence during the entire visit.
“(b) He was aware that decedent had been in the hospital immediately prior to his visit. Mr. Lee obviously became aware of the decedent’s extremely frail health upon his arrival in Miami; that her bedridden and wheel-chair condition clearly indicated to any prudent person a very short life *522 expectancy which in fact was to be for a period of about 60 days thereafter.
“(c) He examined the papers of decedent located at her house.
“(d) He entered decedent’s safe deposit box and brought her its contents.
“(e) He prepared, typed and actively procured execution by decedent of the Warranty Deed of March 23,1974, and the Personal Property Assignment of March 23, 1974.
“(f) These documents which effectively transferred decedent’s entire estate to Defendants Lee were a material deviation from her long-standing testamentary scheme.
“(g) He prepared, typed and actively procured execution by decedent of the Power of Attorney dated March 27, 1974, naming him Attorney-in-fact for decedent and effectively revoking the Stobs’ Power of Attorney. The effect of this Power of Attorney given to him by the decedent was to place in his hands the exclusive control of all of the decedent’s personal estate.
“(h) He hired an attorney (J. M. GOMEZ) to notarize the Warranty Deed and advise him about the necessary documents to effect a survivorship conveyance of decedent’s property.
“(i) He did not consult with the Patton law firm, decedent’s attorneys of longstanding, until after all the documents in question had been executed and/or recorded.
“(j) He directed and supervised the reading of the documents to the decedent, the gathering of witnesses for signature, and the actual execution of the documents. The lay witnesses to the signing of the documents in question obviously did not know their legal significance. Their testimony contained numerous references to the fact that decedent wanted to regain and keep control of her property and not have her homeplace taken away from her.
“(k) He recorded the Warranty Deed and personally paid for the recording and documentary stamp charges.
“(j) He increased the salary paid to MARY NOETHEN, thereby gaining her cooperation and placing her in a position of reliance upon him.
“(m) Having knowledge of the decedent’s Last' Will and Testament and its provisions prior to the preparation of the gift documents aforesaid (see the similarity of language between that contained in the Will and that contained in the assignment of the personal property), he procured a total departure from not only the decedent’s longstanding testamentary disposition of her property, but also a total departure from what the decedent sought to accomplish when she requested him to come to Florida to assist her in what she considered a serious matter.
“7. When viewed as a whole in the light of the existing circumstances, the above and foregoing facts and events clearly reflect that ROBERT EMMETT LEE took advantage of the weakened mental and physical condition of the decedent, caused her to interpose in him trust, confidence and reliance, went beyond her desires for ‘regaining control of her property’, and dealt with her on terms of inequality so as to actively procure the execution by her of the gift documents in question which divested her of her entire estate under circumstances of undue influence, and by virtue of which Defendant Lee was unjustly enriched.
CONCLUSIONS OF LAW
“Based upon the testimony, documentary evidence, pleadings on file, and the observation of the demeanor of the witnesses, it is the finding of the Court that following the arrival of ROBERT EMMETT LEE in the decedent’s household on March 21, 1974, a fiduciary or confidential relationship with the decedent existed, the said ROBERT EMMETT LEE being not only her step-son but an attorney at law from whom she sought counsel and guidance to relieve her anxiety over her financial affairs. A presumption that these gift transactions, made without any consideration, were obtained by undue influence or other improper *523 means thereupon arose. The burden was then upon the donees to rebut this presumption by coming forth with a reasonable explanation of Mr. Lee’s active role in the decedent’s affairs. In re Estate of Carpenter, 253 So. 697 (Fla.1971); Majorana v. Constantine, 318 So.2d 185 (District Court of Appeal, 2d District, August 6, 1975).
“ROBERT EMMETT LEE was called to the home of his step-mother, WINIFRED STUART LEE, because of her anxiety over her relinquishment of control of her assets into a custodial account and the execution of a power of attorney to an attorney in her lawyer’s firm, giving him the authority to pay her incidental bills and manage daily her affairs. Her purpose in calling her step-son to her home was to set these matters aside and regain control of her property. She constantly made reference to the fact that she did not want to lose her home. Upon the arrival of ROBERT EMMETT LEE and his taking over the role of protector of her interests, not only as a step-son, but as an attorney at law, the objective for which he was called was not only totally unaccomplished in so far as restoring management and control of her property to WINIFRED STUART LEE, but in fact resulted in a transfer of that authority from the bank and the attorney STOBS to ROBERT EMMETT LEE himself, together with an added bonus to Mr. Lee in that his activity accomplished not only possession and control but a complete transfer of ownership of her home and her personal estate to himself and his wife upon the death of WINIFRED STUART LEE.
“The Court can find no reasonable explanation in the record of why the Defendant, ROBERT EMMETT LEE, an attorney at law, and almost a stranger to the decedent, notwithstanding the fact that he was a step-son, being called to the bedside of the decedent to relieve her anxiety over the loss of control of her property, nevertheless, in the course of one week’s time, by his own actions and procurement, became, together with his wife, the sole assignee and grantee of all of the decedent’s property and possessed of a power of attorney giving him full and absolute control of her financial affairs, notwithstanding that he was a nonresident of the State of Florida returning to Illinois immediately, and placing him in that status in lieu of a bank and her attorneys of long-standing who took no title by virtue of their position but merely the preservation and care, and protection of her properties. This activity on the part of the Defendant Lee effectively changed her long-standing testamentary plan whereby the Defendants Lee received the entire estate of the decedent by way of gift rather than one-eighth thereof by way of testamentary disposition, and to the exclusion of the charitable beneficiaries of the decedent to the extent of seven-eights thereof. That all of this was accomplished while the decedent was in a weakened mental and physical condition is further evidenced by the fact that within 60 days after the LEE’s return to Illinois, WINIFRED STUART LEE died, with the greater portion of that time spent as a totally disabled patient in a hospital. The Court finds that even absent the confidential relationship which existed, the gift transactions, without consideration, accomplished solely by the activity of the donees, together with the evidence of the mental and physical weakness of the decedent, her lack of advice from prior counsel of long-standing, and her mistaken impression that she was regaining control of her property, demonstrate that unfair advantage was taken of the decedent to the unjust enrichment of the Defendants Lee.”
These findings and conclusions are amply supported by the evidence in the record. A fiduciary relationship was created between the deceased and her stepson and from the circumstances and atmosphere surrounding their dealings wherein she, shortly before her death, executed instruments which effectively transferred all assets in her estate to the full and complete control of her stepson and his wife. Consequently, a presumption of undue influence arose concerning the inter vivos transfers. There has been no reasonable explanation by appellant (Robert Emmett Lee) as to his dealings with his stepmother relative to these gifts. Appellants contend the final judgment is *524 not supported by the evidence. There is conflict in the evidence, but careful review of the record leads us to the conclusion that it is amply supported by competent substantial evidence.
All other questions raised by the appellants have no merit and do not warrant reversal of the judgment of the lower court.
Affirmed.

. This final decree is essentially the same final decree entered by the trial judge and reviewed by this court on the first appeal, except for that portion of the burden placed on the donee to rebut presumption of undue influence which was rejected by this court.