387 So.2d 535 (1980)
John MacNab ALLEN, Appellant,
v.
George H. GORE, Nancy F. Lundy and Richard F. Nelson, Appellees.
No. 79-1895.
District Court of Appeal of Florida, Fourth District.
September 10, 1980.
*536 Oliver Addison Parker, Fort Lauderdale, for appellant.
Donald H. Norman of Ross, Norman & Cory, P.A., Fort Lauderdale, for appellees.
BERANEK, Judge.
John McNab Allen, testatrix's son, appeals from an order denying his petition for revocation of the order admitting her will to probate. We affirm.
Decedent, Dorothy Milliken Allen, a seventy-eight year old widow when she died in 1978, devised her entire estate to Nancy F. Lundy, formerly Nancy L. Nelson, and Richard F. Nelson, leaving nothing to her children and grandchildren. Following the circuit court's admitting the will to probate on July 11, 1978, appellant/son filed his petition seeking revocation of the court's order on grounds that decedent lacked testamentary capacity and was unduly influenced. In its order denying appellant's petition, the court made the following findings of fact and conclusions of law:
B. The Will of DOROTHY MILLIKEN ALLEN, dated January 30, 1979 [sic], devised her estate to two friends, NANCY F. LUNDY, formerly NANCY L. NELSON, and her former husband, RICHARD F. NELSON. The decedent was survived by two children, JOHN McNAB ALLEN and MARY ALLEN PYPER, and four grandchildren. Decedent's date of birth was June 24, 1900; she died on July 4, 1978.
C. Decedent was a widow, living in Fort Lauderdale. Her children lived in the area of New York City. Decedent was a vivacious, out-going lady, of strong will and determination. She was active in business, and had an extensive social life with many friends.
D. Decedent became ill in March of 1973, requiring hospitalization and surgery in Broward General Medical Center. Subsequent to the surgery, the decedent was hospitalized for convalescence in Essex Towers Nursing Home in Fort Lauderdale, being discharged in July, 1973.
E. Decedent made a recovery from her hospitalization, returning to her home and resuming her life. She continued social contacts with many of her friends and neighbors, and attempted to resume her business of real estate.
F. Decedent had been represented before her hospitalization by George H. Gore of Fort Lauderdale, who handled several routine business transactions for her. The decedent made an appointment *537 to see George H. Gore of her own volition in August of 1973, and consulted with him on the 30th of August concerning the making of a new Will.
G. Decedent instructed George H. Gore to prepare a new Will disinheriting her children and grandchildren, and devising all of her property to NANCY F. LUNDY, formerly NANCY L. NELSON, and RICHARD F. NELSON, her husband.
H. Decedent was a patient of Floyd A. Osterman, M.D., a Board-certified specialist in internal medicine, experienced in treatment of geriatric patients since 1959. Dr. Osterman was not only the physician of DOROTHY MILLIKEN ALLEN, but was her friend as well. Decedent saw Dr. Osterman on August 24, 1973, November 1, 1973 and January 31, 1974, spanning the period of time during which DOROTHY MILLIKEN ALLEN was making her Last Will and Testament. Dr. Osterman found her to be lucid and in possession of her faculties on all of these occasions. Dr. Osterman testified regarding the decedent's testamentary capacity between August 30, 1973 and January 31, 1974.
I. Although some evidence was presented relating to some of her eccentricities, at the time she made her Will, the decedent was aware of the nature and extent of her property, the natural objects of her bounty, and knew and understood the nature and act of making a Will.
J. Decedent was taking a sleeping pill, seconal, and a tranquilizer, meprobamate, during the period from August, 1973, through January, 1974, under her physician's supervision, but was not taking excessive quantities of either medication so as to affect her judgment and testamentary capacity.
K. Decedent called her attorney to insist upon executing the Will in January of 1974, and did so in his office in the presence of two members of his lawfirm as subscribing witnesses.
L. Although NANCY F. LUNDY, formerly NANCY L. NELSON, and her former husband, RICHARD F. NELSON, were friends of the decedent, and NANCY F. LUNDY was employed as a legal secretary of attorney George H. Gore, neither of these beneficiaries had any part in the making of decedent's Will, nor did they influence her in any respect to devise her property to them. There was no conspiracy to obtain any benefits from decedent, nor any active procurement of her Will by any beneficiary or other person.
M. Decedent announced her intention to devise her property to the NELSONS, both prior and subsequent to the making of her Will, to other persons, and clearly made this decision of her own volition.
N. Decedent was subsequently hospitalized in December of 1975, and January of 1976, at which time she was diagnosed as suffering from organic brain syndrome. The decedent used larger quantities of seconal and meprobamate toward the end of her life, subsequent to July, 1974. Nevertheless, the decedent's faculties were not impaired during the period of time from August 30, 1973, through January 30, 1974.
O. The Court finds that the Petitioner, JOHN McNAB ALLEN, neither raised a presumption of undue influence, nor carried this issue by preponderance of the evidence. There was no undue influence exerted upon decedent by anyone.
P. The Court finds that the decedent, DOROTHY MILLIKEN ALLEN, possessed testamentary capacity at the time of the making of her Will, and that the Petitioner, JOHN McNAB ALLEN, has failed to carry his burden of proof on any of the issues presented in this cause, including fraud in the execution of the Will.
Q. The Court finds that although the Will may have been an unusual disposition of the decedent's property, unnatural in the sense that she disinherited her children and grandchildren in favor of two young friends, she possessed testamentary capacity, was free of undue influence, and made the Will as her own *538 free act and deed, as she had a legal right to do.
R. Decedent may have been incompetent in her last years, particularly subsequent to December, 1975, and thus unable to change her Will, but the Will was valid when made on January 30, 1974.
We find no merit to appellant's contention regarding testamentary capacity, but deem it necessary to discuss the issue of undue influence. Established Florida law provides that if a substantial beneficiary under a will occupies a confidential relationship with the testator and is active in procuring the contested will, the presumption of undue influence arises. In re Estate of Carpenter, 253 So.2d 697, 701 (Fla. 1971); Zinnser v. Gregory, 77 So.2d 611 (Fla. 1955). Confidential relationship encompasses a broad range of technical, fiduciary and informal relations where one man simply trusts in and relies upon another. In re Estate of Carpenter, supra. Ms. Lundy had been one of George Gore's secretaries for ten years and was working for him when he drafted the will. This evidence supports an inference of a confidential relationship between George Gore and Ms. Lundy which can be imputed to Ms. Lundy and decedent, as the trial court found. See Cline v. Larson, 234 Or. 384, 383 P.2d 74 (1963); In re Lekos' Estate, 109 Cal. App.2d 42, 240 P.2d 387 (1952). The mere existence of a confidential relationship between decedent and beneficiary, however, does not raise a presumption of undue influence unless accompanied by the element of active procurement. In re Estate of Carpenter, supra; In re Joiner's Estate, 156 So.2d 161 (Fla. 1963).
In determining the existence of active procurement, courts apply several criteria: (a) the presence of the beneficiary at the execution of the will; (b) presence of the beneficiary on those occasions when testator expressed a desire to make a will; (c) recommendation by the beneficiary of an attorney to draw the will; (d) knowledge of the contents of the will by the beneficiary prior to execution; (e) giving of instructions on preparation of the will by the beneficiary to the attorney drawing the will; (f) securing of witnesses to the will by the beneficiary; and (g) safekeeping of the will by the beneficiary subsequent to execution. In re Estate of Carpenter, supra, 702. Not all criteria need be present for the presumption to arise. Application of these factors to the instant case reveals minimal evidence at most. The trial court found no active procurement as a factual matter and this conclusion has a clear basis in the evidence. The beneficiary and the testatrix were not strangers. Testatrix's relationship with her children had deteriorated and she had become a close personal friend of the Nelsons. In fact, she spent numerous holidays with them over a period of years.
Appellant simply failed to carry his burden of proving that appellees actively procured the will; consequently, the presumption never arose. In re Estate of Robertson, 372 So.2d 1138 (Fla.3d DCA 1979). Even if the proofs were sufficient to raise the presumption, appellees satisfied their burden of coming forward with a reasonably credible explanation for the disposition of the property. In re Estate of Carpenter, supra. Accordingly, the order appealed from is AFFIRMED.
AFFIRMED.
WESSEL, JOHN D., Associate judge, concurs.
LETTS, C.J., concurs specially.
LETTS, Chief Judge, concurring specially:
I concur completely in the majority opinion. However for future reference I find it worthwhile to add that lawyers are well advised not to draw wills for clients if an employee of that same lawyer is a beneficiary thereunder, especially when it must be remembered that disinherited relations are not surprisingly looking for any ammunition to set aside an instrument of their exclusion. I might also add that this advice is the worst form of Monday morning quarterbacking for I well remember drafting a will myself which contained a small remembrance for my own secretary.
*539 In this case it is clear from the record that there really was no credible handle for the excluded relatives to grab hold of, other than that the substitute beneficiary worked in the draftsman's office. However that was a credible handle otherwise there would be no room for a court contest, never mind an appeal.