# IN RE: ESTATE OF ARTHUR E. DAVIS, Deceased

## Case No. 81-3058

Seventeenth Judicial Circuit, Probate Division, Broward County

October 21, 1981

## APPEARANCES OF COUNSEL

**Todd L. Smith** and **Nancy Lee Hoffman** for petitioner, Arthur E. Davis, Jr.

**Jerrold E. Shaffner** for personal representative.

## OPINION OF THE COURT

W. CLAYTON JOHNSON, Circuit Judge.

This cause came forward to be heard on October 1, 1981, by Arthur E. Davis, Jr., Petitioner, on Motion for the Revocation of Probate of the Will of Arthur E. Davis, Deceased, dated October 3, 1980. Petitioner is the son and only lineal descendant of decedent and would be entitled to distribution if said will were denied probate.

The following findings of fact and law were made.

From the time decedent's wife died in July of 1980, he became increasingly dependent on Personal Representative, Claire Jones, to

help him with his affairs because of his legal blindness. In October of 1980, after discussion with attorney, Chris C. Cloney, and examination by psychiatrist, Dr. Claude Moraes, he executed a new will in favor of Mrs. Jones.

Mrs. Jones continued to assist decedent with his financial affairs, but by the end of 1980 he expressed concern about some unauthorized withdrawals from his bank account. In March of 1981 he discussed this with his accountant and his attorney. Decedent was unwilling to file criminal charges against Mrs. Jones but did express a desire to change his will. In a later conversation he said he had taken care of destroying the will. He also made attempts in May to hire live-in help so he would no longer need to depend on Mrs. Jones.

During the same period he communicated with his grandson that he was disappointed with his family and got along well with the Joneses.

Decedent died on June 6, 1981. His original will was in the hands of Mrs. Jones, the copy which had been in decedent's possession was not found, the copy which had been kept in the attorney's file but was later returned to decedent (so identified because it had never been folded) was found under the mattress of decedent's bed with some red stains upon it.

Although Petitioner did not allege that decedent lacked testamentary capacity at the time of the execution of said will, Mr. Chris C. Cloney, the attorney who prepared the will, and Dr. Claude Moraes, the psychiatrist who examined decedent seven days prior to the execution of the will, both testified that decedent was, in their opinion, fully capable of executing his will and did not lack testamentary capacity.

Petitioner alleged and presented sufficient evidence that the Personal Representative was a substantial beneficiary under the will; did not have a confidential relationship with decedent, as decedent was legally blind and relied upon Personal Representative to handle some of his financial affairs; and was active in procuring the will by driving decedent to the attorney's office.

"It is established in Florida that if a substantial beneficiary under a will occupies a confidential relationship with the testator and is active in procuring the contested will, the presumption of undue influence arises." *In Re Estate of Carpenter*, Fla., 253 So.2d 697 at 701.

Since Petitioner produced sufficient evidence to raise the presumption, the burden shifted to the Personal Representative to rebut the undue influence presumption.

46

It has been stipulated that the Personal Representative is a substantial beneficiary of the will.

On the issue of active procurement, Personal Representative testified that she did drive decedent to the lawyer's office because decedent's eyesight had deteriorated and he was unable to drive his car. Beyond this service to decedent the court was unable to find any active procurement. The recommendation of the attorney that decedent be examined by a psychiatrist indicates that all parties were being very careful to avoid even the appearance of active procurement.

Confidential relationship is a legal concept. "The relation and the duties involved in it need not be legal. It may be moral, social, domestic, or merely personal." See *Carpenter*, supra at 701. Decedent was legally blind and therefore depended on the Personal Representative to assist him with his financial affairs. However, he maintained communication with his son and grandson from the time the will was written until shortly before his death and indicated to grandson in a letter that he felt he was in control of his affairs. Decedent acknowledged his dependence on Personal Representative and her husband to read for him and complained that they "know things that should be confidential," indicating that he felt the relationship was not one of full confidence.

The court finds that there is sufficient evidence to rebut the presumption of undue influence which now disappears.

Evidence was introduced that the decedent later became dissatisfied with his will and stated that he intended to destroy it, even indicating at one time that he had done so.

A will or codicil is revoked by the testator, or some other person in his presence and at his direction, by burning, tearing, canceling, defacing, obliterating, or destroying it with the intent, and for the purpose, of of revocation. F.S.A. Section 732.506.

Although it appears that decedent had the requisite intent to destroy the will, the original which was in the possession of the Personal Representative and the copy which had been kept in the attorney's file but was returned to the decedent's possession were both still in existence. As stated in *In Re Gross' Estate*, Fla., 144 So.2d 861 at 862, "Substantial compliance is not sufficient. The directions of the statute must be followed and its conditions met."

Therefore, it appears that whatever may have been decedent's intent with regard to his will, he did not revoke it either by a subsequent will

47

or codicil or by an effective destruction by his own hand or in his own presence, it is, therefore,

ORDERED AND ADJUDGED that Petition for Revocation of Probate is hereby denied.