462 So.2d 12 (1984)
In re ESTATE OF Arthur E. DAVIS, Deceased.
No. 81-2241.
District Court of Appeal of Florida, Fourth District.
September 19, 1984.
Todd L. Smith, P.A., and Nancy Little Hoffman, P.A., Fort Lauderdale, for appellant-Arthur E. Davis, Jr.
Bruce G. Shaffner and Matt D. Hellman of Shaffner, Shaffner & Dyer, P.A., Fort Lauderdale, for appellee-Claire Jones.
EN BANC.
We recede from the holding in In Re Estate of Davis, 428 So.2d 774 (Fla. 4th DCA 1983).
The correct and applicable principles of law were announced in In Re Estate of Carpenter, 253 So.2d 697 (Fla. 1971).
We find that the trial court properly followed the process outlined in In Re Estate of Carpenter, supra, and that no reversible error has been demonstrated.
Affirmed.
ANSTEAD, C.J., and DOWNEY, LETTS, HERSEY, HURLEY, DELL, WALDEN and BARKETT, JJ., concur.
GLICKSTEIN, J., concurs specially with opinion.
GLICKSTEIN, Judge, concurring specially.
As the author of the original opinion in this case,[1] from which the court has now receded, I wish to concur by separate opinion *13 in order to express some thoughts that the new opinion does not verbalize:
1. In Re Estate of Carpenter, 253 So.2d 697 (Fla. 1971), pre-dated the effective date, July 1, 1979, of the Florida Evidence Code, specifically sections 90.302-.304, Florida Statutes (1976). However, I frankly should have been aware of the effect of Cripe v. Atlantic First National Bank of Daytona Beach, 422 So.2d 820, 823 (Fla. 1982), which, albeit by way of analogy or dictum, reiterated the substance of the pre-code holding in Carpenter, inasmuch as Cripe concerned active procurement, by undue influence, of a joint bank account rather than a will.[2] Accordingly, the original opinion in Davis authored by the writer was in error in describing the presumption of undue influence to be non-vanishing.[3] The burden of proof or persuasion continues to lie with the contestant of a will, once the proponent has sustained the burden of establishing prima facie its execution and attestation.
2. While the foregoing principle is settled in Florida, a reading of academicians' varied and conflicting expressions upon the subject of presumption could be equated with the floor debate of a myriad of political parties in some European country. The confusion is evidenced by the congressional debate over proposed Rule 301 of the Federal Rules of Evidence described in 21 C. Wright & K. Graham, Federal Practice and Procedure §§ 5121-29 (1977) as well as the varied interpretation of the rule once it was adopted.[4] Nevertheless, the foregoing text should be initial required reading for the judge or lawyer about to step into these murky waters because of its keen analysis of the battlelines and participants together with a summary of the divergent interpretations. As the authors point out:
[I]t is now necessary to introduce a topic upon which courts have taken inconsistent positions and that has split the academicians into warring camps. This is, the question of the procedural effect of a presumption in the face of rebutting evidence. As was the case with judicial notice, there are supposed to be two schools of thought identified by the names of their leading spokesman; here again one must speak of a "Thayer-Wigmore" vs. "Morgan-McCormick" conflict.
Id. § 5122, at 562-63 (footnote omitted).
Under the theory of presumptions attributed to Thayer and Wigmore, a presumption was a matter of procedural convenience and was to operate only in the absence of any evidence of the presumed fact. Once the opponent introduced sufficient evidence of the nonexistence of the presumed fact to justify a jury finding in his favor, the operation of the presumption was at an end. On a subsequent motion for a directed verdict or other peremptory ruling, the judge was to decide the issue free from any compulsion of the presumption. Of course, in the hypothetical case, since the basic fact of the presumption would give rise to an inference that the presumed fact existed, the plaintiff would be entitled to go to the jury on the strength of the inference. But where there was no such logical connection between the basic fact and the presumed fact, the Thayer-Wigmore view of presumptions supposedly meant that unless there was other evidence of the existence of the presumed *14 fact, the opponent was entitled to a directed verdict on that issue. This notion that a presumption "vanished" in the face of rebutting evidence has been characterized by a number of picturesque similes; the one that was favored during the Congressional debates referred to it as the "bursting bubble" theory.
Professors Morgan and McCormick felt that presumptions should be given greater effect than this, though for somewhat different reasons. Professor Morgan felt that presumptions were created for reasons of policy, not just procedural convenience. To him, it seemed foolish for courts to create a presumption that would vanish upon the introduction of contrary evidence, particularly where the evidence was such that a jury might well refuse to believe it. He argued that a presumption should have the effect of not only shifting the burden of producing evidence, but the burden of proof as well. Professor McCormick, while not going this far, thought the jury should be instructed about the existence of the presumption and told that it would permit them to find contrary to the testimony of the nonexistence of the presumed fact. McCormick argued that most of the presumptions were based on an inference, that jurors were prone to distrust circumstantial evidence, and that instructions on presumptions were a useful way to avoid restrictions on judicial comment and advise the jury of the probative worth of inferences.
Id. at 564-65 (footnotes omitted).
Professor Morgan got his theory into the first draft of the Model Code of Evidence, but after a spirited debate, the American Law Institute voted 59 to 42 in favor of the pure Thayerian approach to presumptions.
Id. at 566 (footnote omitted).
Meanwhile, the position of the various appellate courts on the procedural effect of presumptions was much less tidy than that of the academic commentators. While a number of courts gave lip service to the Thayerian dogma, most of them felt compelled to deviate from the "bursting bubble" theory at one time or another in order to give greater effect to presumptions. Morgan once counted at least eight different doctrines adopted by courts to describe the procedural consequences of a presumption. Yet only one state, Pennsylvania, was willing to go as far as Morgan, and even there the courts seem to have retreated from the notion that a presumption always shifts the burden of proof.
Id. at 566-67 (footnote omitted).
3. Florida's Code of Evidence generally follows that of California in this area of discussion; and the important point to me is that Section 90.303, Florida Statutes (1976),[5] plainly provides that those presumptions involving public policy affect the burden of proof, i.e., they are non-vanishing. I am troubled that in Florida once a contestant has established that a person in a position of confidence has actively procured the execution of the will, thus triggering the "presumption," the contestant still has the burden of proof. In other words, there is no public policy which would shift the burden of proof to the proponent. I find value in the views expressed by the Supreme Court of Utah in In re Swan's Estate, 4 Utah 2d 277, 290, 293 P.2d 682, 691 (1956), wherein it quoted from a reference in one of its earlier decisions:
Mr. Pomeroy, in volume 2, § 956, of his excellent work on Equity Jurisprudence, says: `While equity does not deny the possibility of valid transactions between the two parties, yet, because every fiduciary relation implies a condition of superiority held by one of the parties *15 over the other, in every transaction between them by which the superior party obtains a possible benefit, equity raises a presumption against its validity, and casts upon that party the burden of proving affirmatively its compliance with equitable requisites, and thereby overcoming the presumption.'
It further said:
After careful study and consideration we conclude that this presumption shifts the burden onto the confidential adviser of persuading or convincing the fact finder by a preponderance of the evidence that no fraud or undue influence was exerted, or in other words, he has the burden of convincing the fact finder from the evidence that it is more probable that he acted perfectly fair with his confidant; that he made complete disclosure of all material information available and took no unfair advantage of his superior position than that he exerted fraud or undue influence to obtain the benefits in question. This is contrary to our holding in the Jardine case, which is supported by the California case, and some other decisions that clear and convincing evidence to the contrary is necessary to overcome such presumption. We reach this conclusion because we feel that the rule is more clear and understandable than the rule requiring clear and convincing evidence; that this rule is more apt to produce a just result and is more generally recognized as the correct rule governing this situation.
We adopt this rule not as punishment to the lawyer or other confidential adviser who accepts gifts or other possible benefits from a person who reveals to him his secrets and relies on him for disinterested advice and counsel but because in most cases it is apt to produce a correct finding of the facts, for a confidential adviser who practices fraud or undue influence has a strong motive for concealing the truth and the person whose confidence he betrays, even though available as a witness, does not know the schemes and plans used against him to accomplish the desired result.
Id. at 293-94, 393 P.2d at 693 (footnote omitted).
Thus a definite need is shown that the presumption arising out of confidential dealings shall shift the burden of persuasion that there was no fraud or undue influence onto the confidential adviser. For the confidant relies on him and trusts him to give disinterested advice and counsel, and usually reveals to him his inner-most secrets, thereby furnishing opportunity to take advantage of such trust and confidence. Self interest always furnishes a motive for such confidential adviser to take advantage of his superior position, and after the death of the person who confides in him, the adviser can testify of their secret dealings, knowing that no other witness of such events will be available.
Id. at 293, 393 P.2d at 692.
The court said in Carpenter, 253 So.2d at 703-04:
Petitioners urge that policy considerations inherent in the difficulty of proof of undue influence dictate that the burden of proof should shift to Mary. They note that in will contests the testator is not available as a witness to tell his version of such dealings, that in fact usually the only person who is available to testify is the confidential adviser whose self-interest furnishes a motive for him to take advantage of his superior position. This is certainly true and points out the significance of a spectator to certain preambulatory events. We acknowledge that undue influence is rarely susceptible of direct proof, primarily because of the secret nature of the dealings between the beneficiary and the testator, and because of the death of one of the principals to the transaction, the testator.
Nevertheless, we do not think that these considerations require that the burden of proof or risk of nonpersuasion be shifted onto the beneficiary. Because it is frequently as difficult to disprove undue influence as to prove it, the practical *16 effect of shifting the burden of proof is to raise the presumption virtually to conclusive status and require a finding of undue influence, as happened in the case sub judice. Thereby, much of the discretion of the trial judge to evaluate and weigh the evidence before him is lost, and with it one of the most valuable services we call on trial judges to perform in non-jury cases. We are unable to agree with any theory which vests great discretion in the trier of fact in other kinds of cases but ties his hands in will contest cases.
The better rule, enunciated by this Court in Leonetti v. Boone, supra, [74 So.2d 551 (Fla. 1954)], shifts to the beneficiary only the burden of coming forward with a reasonable explanation for his or her active role in the decedent's affairs, and specifically, in the preparation of the will, and we so hold. Such a result comports with what we conceive to be the intent of Fla. Stat. § 732.31, F.S.A., in providing that the burden of proof in will contests shall be on the contestant to establish the facts constituting the grounds upon which the probate of the purported will is opposed.
Given the statutory predicate as the keystone of the opinion which, to me, survives any criticism of the remaining language, I hope the legislature will revisit the subject matter. This case, in my view, in itself justifies such review of the statute. I find it an anathema for a beneficiary to be present during execution of a will or when an attorney is discussing a prospective will with a testator client.
NOTES
[1] In re Estate of Davis, 428 So.2d 774 (Fla. 4th DCA 1983), as clarified at 438 So.2d 543 (Fla. 4th DCA 1983)
[2] See the underlying statutory basis; namely, section 733.107, Florida Statutes (1975), which provides:

Burden of proof in contests.  In all proceedings contesting the validity of a will, the burden shall be upon the proponent of the will to establish prima facie its formal execution and attestation. Thereafter, the contestant shall have the burden of establishing the grounds on which the probate of the will is opposed or revocation sought.
[3] There is tenuous refuge, if any, in the old saw that even Homer sometimes nodded.
[4] The rule provides:

In all civil actions and proceedings not otherwise provided for by Act of Congress or by these rules, a presumption imposes on the party against whom it is directed the burden of going forward with evidence to rebut or meet the presumption, but does not shift to such party the burden of proof in the sense of the risk of nonpersuasion, which remains throughout the trial upon the party on whom it was originally cast.
[5] Section 90.303 provides:

Presumption affecting the burden of producing evidence defined.  In a civil action or proceeding, unless otherwise provided by statute, a presumption established primarily to facilitate the determination of the particular action in which the presumption is applied, rather than to implement public policy, is a presumption affecting the burden of producing evidence.