963 So.2d 731 (2007)
Francisco Gerardo DIAZ, Appellant,
v.
Frank E. ASHWORTH, Appellee.
No. 3D06-2150.
District Court of Appeal of Florida, Third District.
May 23, 2007.
Rehearing Denied July 10, 2007.
Arthur J. Morburger and Peter A. Cohen; Osvaldo N. Soto, Miami, for appellant.
Arnaldo Velez, Coral Gables, for appellee.
Before COPE, C.J., and FLETCHER and LAGOA, JJ.
PER CURIAM.
Francisco Gerardo Diaz appeals from a final judgment dismissing his complaint in this will contest. Diaz challenged the probate of the will of Jorge Mesa dated July 10, 2003 which named Frank Ashworth as his sole beneficiary. Diaz argued that at the time of execution Mesa lacked testamentary capacity and was under Ashworth's undue influence. A bench trial on the claims revealed the following facts.
Mesa, and his partner, Silvio Segarra, lived in a home owned by Segarra. Both Segarra and Mesa suffered from AIDS. Segarra transferred title to the home, which was their only significant asset, to himself and Mesa with rights of survivorship. Thereafter, Mesa consulted his attorney *733 to have a will prepared. Having no blood relatives in the United States, Mesa named Hipolita Benetiz (his father's sister-in-law) as his beneficiary, with her daughter as alternate.
Prior to Segarra's death, Mesa and Segarra were referred to Diaz for spiritual counseling in his role as a Catholic priest. Diaz became more involved in Mesa's life after Segarra died in July 1999. He drove Mesa to medical appointments, took him food, paid for some of his expenses and visited him. Mesa changed his will in favor of Diaz at this time. He told Diaz about the new will at Christmas referring to it as his gift.
For unknown reasons, the Diaz-Mesa relationship subsequently cooled. Mesa's neighbors, Ivan Rodriguez and his sister, Anibel, and Frank Ashworth, and his wife, Cecilia, testified that as good neighbors they did chores for Mesa, including taking him to medical appointments.
By the spring of 2003, Mesa's condition worsened. On June 26, 2003 he was taken by ambulance to Coral Gables Hospital. The hospital records described an advanced state of HIV disease, but consistently described the patient as awake, alert and oriented. According to Mrs. Ashworth, on July 9, 2003 while visiting him at the nursing center to which he was transferred after his hospitalization, Mesa indicated his desire to make a new will. Mrs. Ashworth contacted her husband, who suggested Attorney Pilafian. (Ashworth had been represented by Pilafian in the past and had worked for the attorney as a driver for a time.) Mesa spoke by phone with Pilafian, and the following morning, Mesa, against medical advice, left the nursing center. The Ashworths drove Mesa to his long-term physician, Dr. Steinhart. The doctor's examination notes of this visit show that Mesa knew he was going to die shortly, he wanted to go home for his final days, and he agreed to receive hospice care there.
From Dr. Steinhart's office, Mesa was taken by the Ashworths to Attorney Pilafian's office. Attorney Pilafian, his secretary, and the Ashworths were present at the execution of the will at issue. Mrs. Ashworth and the secretary signed the will as witnesses. The witnesses testified that the will was prepared in accordance with information obtained from the testator and that the will was read to Mesa prior to his signing it. The secretary described Mesa as weak, but able to walk unaided and having his wits about him. From the attorney's office, Mesa was returned to his home where he remained more or less isolated[1] until he died on July 28, 2003.
After a careful review of the record, we adopt the trial court's thorough and well-written order which states in pertinent part:
In Raimi v. Furlong, 702 So.2d 1273, 1286 (Fla. 3d DCA 1998), our Third District concisely set out the applicable standards for a determination of testamentary incompetence, stating:
It has long been emphasized that the right to dispose of one's property by will is highly valuable and it is the policy of the law to hold a last will and testament good wherever possible. See In re Weihe's Estate, 268 So.2d 446, 451 (Fla. 4th DCA 1972), quashed on existing facts, 275 So.2d 244 (Fla. 1973); In re Dunson's Estate, 141 So.2d [601] at 604 [ (Fla. 2d DCA *734 1962)]. To execute a valid will, the testator need only have testamentary capacity (i.e. be of "sound mind") which has been described as having the ability to mentally understand in a general way (1) the nature and extent of the property to be disposed of, (2) the testator's relation to those who would naturally claim a substantial benefit from his will, and (3) a general understanding of the practical effect of the will as executed. See In re Wilmott's Estate, 66 So.2d 465, 467 (Fla.1953); In re Weihe's Estate, 268 So.2d at 448; In re Dunson's Estate, 141 So.2d at 604. "A testator may still have testamentary capacity to execute a valid will even though he may frequently be intoxicated, use narcotics, have an enfeebled mind, failing memory, [or] vacillating judgment." In re Weihe's Estate, 268 So.2d at 448. Moreover, an insane individual or one who exhibits "queer conduct" may execute a valid will as long as it is done during a lucid interval. See Id.; see also Coppock v. Carlson, 547 So.2d 946, 947 (Fla. 3d DCA 1989) (whether testator had the required testamentary capacity is determined solely by his mental state at the time he executed the instrument), rev. denied, 558 So.2d 17 (Fla.1990).
Applying these standards, I find that Mr. Mesa was competent to make the July 10, 2003, Ashworth will. He understood the nature and extent of his property, he knew those who would naturally claim a substantial benefit from his will, and it is clear that he was aware of the practical effect of the will he signed. He knew that he was going to die. He made an informed decision to accept hospice care instead of further treatment just prior to making the Ashworth will. Dr. Steinhart believed Mr. Mesa was competent to make such an obviously important decision.
Petitioner's second claim is that Mr. and Mrs. Ashworth unduly influenced Mr. Mesa to make the July 10, 2003 will. Father Diaz argues that the evidence shows the Ashworths never had a prior close relationship with Mr. Mesa, that their deep involvement in the making of the will, together with their attempts to insulate Mr. Mesa from contact with others after the will was made, all done at a time when Mr. Mesa was in the final stages of the AIDS illness, prove that the Ashworths obtained the will in question by unduly influencing Mr. Mesa's decision.
The starting point to determine whether a will has been procured by the exercise of undue influence is the analysis required by In re: Estate of Carpenter, 253 So.2d 697 (Fla.1971). Under Carpenter, once it is established by the proponent that the will was properly executed, the contestant then must show, prima facie, the existence of a confidential relationship between the testator and the active procurement of the will by the proponent. Carpenter discusses those factual circumstances which may give rise to such a determination which, once made, results in a presumption that the will is the product of undue influence. Using the Carpenter test, I find that a presumption of undue influence was established by the evidence. Mr. Ashworth is the sole beneficiary under the July 10, 2003 will; he was present at its execution; Mrs. Ashworth was present on July 9, 2003, when Mrs. Mesa stated that he wished to make a will; Mr. Ashworth recommended that his attorney, Mr. Pilafian, draw the will; while disputed as to whether he learned of it on July 9 or July 10, 2003, Mr. Ashworth was aware of the contents of the will before it was *735 signed; and Mrs. Ashworth was one of the subscribing witnesses. Add to this fact that Mr. Ashworth brought Mr. Mesa to Mr. Pilafian's office to sign the will and that he and his wife were active in caring for him after the will was signed, and it is clear the Ashworths occupied a confidential relationship with Mr. Mesa.

Carpenter provides that once evidence of such a presumption of undue influence has been made, it does not shift the burden of proof to the proponent of the will to prove the will was not the product of undue influence. Rather, it merely shifts to the proponent "the burden of coming forward with a reasonable explanation for [the beneficiary's] active role in the decedent's affairs, and specifically, in the preparation of the will . . .". 253 So.2d at 704. Carpenter holds that it then becomes the responsibility of the trial court to determine whether the proponent has, prima facie, satisfied this burden of reasonable explanation. Finally, once all these presumptions and burdens are met, the decision rests on the traditional evidentiary test of who has proven their case by a preponderance of the evidence.
Subsequent to Carpenter, however, the legislature enacted an amendment to § 733.107, Fla. Stat., to prohibit the shifting of the burden of proof in presumption of undue influences cases. See, e.g., Hack v. Janes, 878 So.2d 440, 443 (Fla. 5th DCA 2004). As it now stands, in those cases where the proponent of a will satisfies, prima facie, the will is facially proper, and the contestant thereafter satisfies, prima facie, a presumption of undue influence in the making of the will, the proponent of the will has the burden of proving the will was not the product of undue influence. That burden must be met by a preponderance of the evidence as determined by the trier of fact.
Using these standards, I find that the Petitioner [sic] has proven by a preponderance of the evidence that the will was not the product of undue influence by Mr. and Mrs. Ashworth. Mr. Mesa was capable of making his own decision about who would receive his property when he signed the Ashworth will. The will he signed on July 10, 2003, and the two previous wills he made in the two years prior to 2003, each named non-relatives as beneficiaries. Each will was very basic. On July 10, 2003, Mr. Mesa knew what a will was and he was clear about his wishes as to who should inherit his property. On the same day as the Ashworth will, Mr. Mesa also made another significant decision to reject further medical treatment and to enter hospice care at his home rather than spend his last days in an institution. Dr. Steinhart's records and testimony are clear that Mr. Mesa was competent to make these decisions. I find the preponderance of the evidence in this case is that Mr. Mesa was competent and not unduly influenced in making the will dated July 10, 2003.
Based on the facts in this case as found by the trial court, we hold that the trial court's order is supported by clear and convincing evidence and affirm.
Affirmed.
NOTES
[1] The reason for his isolation was one of the disputed issues at trial. Diaz claimed it was a result of manipulation by the Ashworths to deny access to Mesa. The Ashworths, on the other hand, maintained that visitation was restricted at Mesa's request. The trial court found the latter to be the more credible evidence.