# Third District Court of Appeal

## State of Florida

Opinion filed February 3, 2021.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D20-736
Lower Tribunal No. 17-153-K
_____

## Marvalene Hannibal and Kendra Matthews,
Appellants,

vs.

## Portia Brandy Navarro and Alzata Thurston,
Appellees.

An Appeal from the Circuit Court for Monroe County, Timothy J. Koenig, Judge.

Paul M. Cowan & Associates, P.A., and Paul M. Cowan, Anthony M. Diblasi, and Manuel A. Celaya, for appellants.

Ross & Girten, and Lauri Waldman Ross; Law Offices of Samuel J. Kaufman, P.A., and Samuel J. Kaufman (Key West), for appellees.

Before EMAS, C.J., and FERNANDEZ and MILLER, JJ.

EMAS, C.J.

Appellants, Marvalene Hannibal ("Marvalene") and Kendra Matthews ("Kendra") appeal a final judgment entered in favor of Portia Brandy Navarro ("Navarro") and Alzata Thurston ("Thurston"), admitting to probate a 2003 will of Decedent Arlene Matthews-Walton ("Ms. Matthews"), and appointing Thurston personal representative of Ms. Matthews' estate. For the reasons that follow, we affirm the final judgment.

**FACTS AND PROCEDURAL BACKGROUND**

Following Ms. Matthews' death in 2017, her daughter, Navarro, filed a petition for formal administration of Ms. Matthews' will, executed in 2003 (the "2003 Will").[1]

The 2003 Will directed that Ms. Matthews' home in Key West be sold and the proceeds distributed to her five children: Navarro, Marvalene, Charles Mirth, Jr., William Edward Matthews, and Roland Bessellieu, Jr. However, the Will specified that Marvalene would receive only 4% of the sales proceeds, whereas the other four children would each receive 24% of the sale proceeds. In addition, the 2003 Will devised another vacant lot in Key West solely to Navarro, and devised the remainder of her cash and

---

[1] The petition was later amended and joined by Thurston, Ms. Matthews' niece, who had been designated as an alternate personal representative. Although Navarro was designated in the 2003 Will as the personal representative, she consented to the appointment of Thurston due to Navarro's own inability to serve in that capacity.

personal property equally to all of Ms. Matthews' children, with the exception of Marvalene, who was to receive nothing of the remainder.

Following Navarro's petition for formal administration of the 2003 Will, Marvalene objected, asserting, *inter alia*, that the will was a product of undue influence. This objection was later amended and joined by two of Marvalene's brothers, William Matthews and Charles Mirth, as well as Antoinette Bessellieu, the child of brother Roland Bessellieu, who had predeceased his mother (hereinafter "the Objectors"). The Objectors contended that Navarro had exerted undue influence on their mother, and that the 2003 Will was a result of such undue influence.[2]

Eventually, the parties all stipulated to a presumption of undue influence, pursuant to section 733.107(2), Florida Statutes (2019), and agreed that the burden to prove that the 2003 Will was not the product of undue influence was on Navarro, under a standard of preponderance of the evidence.

The parties proceeded to trial solely on the claim of undue influence. At trial, several witnesses testified live and the trial court considered the deposition testimony of William Matthews (who had died during the course

---

[2] The Objectors also argued that Ms. Matthews lacked testamentary capacity, that the 2003 Will was improperly executed, and that the Will was a result of fraud and tortious interference with an expectancy.

of the proceedings)[3] as well as deposition testimony of the attorney who prepared the 2003 Will.

The testimony at trial revealed that in 1989, Ms. Matthews had taken a mortgage on her home with high interest so that she could loan Marvalene money to open a bar/restaurant in Key West. However, the business ultimately closed, and Marvalene left town, never repaying her mother, a fact which witnesses testified placed a financial burden on Ms. Matthews and led to resentment. Conversely, the testimony at trial also established that Navarro had a very close relationship with her mother, and cared for her both personally and financially over the years.

Following the trial, the trial court concluded that Navarro had proven by a preponderance of the evidence that the 2003 Will was not the product of undue influence, and accordingly entered final judgment in Navarro's favor, admitted the 2003 Will to probate, and appointed Thurston as the personal representative.

Marvalene and Kendra Matthews appealed, contending that the trial court incorrectly applied the presumption of undue influence and misapprehended the evidence at trial.

---

[3] William Matthews' daughter, Kendra Matthews, was substituted in his place in the proceedings following his death.

**ANALYSIS AND DISCUSSION**

We review de novo the legal question related to section 733.107(2), and we review the trial court's factual findings for competent substantial evidence. See In re Estate of Murphy, 184 So. 3d 1221 (Fla. 2d DCA 2016) (providing that the application of an evidentiary presumption is subject to a de novo standard of review); Madrigal v. Madrigal, 22 So. 3d 828 (Fla. 3d DCA 2009) (noting that affirmance was warranted where the trial court's findings of fact were supported by competent substantial evidence and the findings of fact support the trial court's determination of undue influence).

Florida law recognizes that a will procured by undue influence is void. § 732.5165, Fla. Stat. (2019). Generally, the person opposing a will has the burden to establish the grounds upon which the probate of the will is opposed, including undue influence. § 733.107, Fla. Stat. (2019).

In 1971, the Florida Supreme Court held that a rebuttable presumption of undue influence arises when a substantial beneficiary under a will occupies a confidential relationship with the testator and is active in procuring the contested will. Carpenter v. Carpenter, 253 So. 2d 697, 701 (Fla. 1971). The Court held, however, that if the beneficiary comes forward with a reasonable explanation for her active role in the decedent's affairs, the presumption of undue influence "will vanish from the case," and the

5

beneficiary does not have the burden to prove the absence of undue influence. Id. at 703-04.

In 2002, the Florida Legislature amended section 733.107, adding a new subsection, which provides:

> (2) In any transaction or event to which the presumption of undue influence applies, the presumption implements public policy against abuse of fiduciary or confidential relationships and is therefore a presumption shifting the burden of proof under ss. 90.301-90.304.

Accordingly, under the amended statute, applicable here, the alleged wrongdoer bears the burden of proving that there was no undue influence. Hack v. Janes, 878 So. 2d 440, 443 (Fla. 5th DCA 2004).

However, and of significance here, the parties stipulated to the legal issues with regard to undue influence and the burden of proof. Thus, all that remained was for the trial court to determine whether Navarro met her burden of proof, by a preponderance of the evidence, to establish that Ms. Matthews' 2003 Will was not procured by undue influence. And this is precisely what the trial court did.

The arguments advanced here by appellants are little more than a request for this court to reweigh the evidence presented to the trial court below, and this we cannot do. See Madrigal, 22 So. 3d 829 (noting: "It is axiomatic that the trial court's resolution of conflicting evidence will not be

6

disturbed by a reviewing court in the absence of a clear showing of error, or that the conclusions reached are erroneous") (internal quotation omitted). Upon our review of the record below, we conclude there is competent substantial evidence to support the trial court's determination that the 2003 Will was not procured by undue influence, and therefore affirm. See Diaz v. Ashworth, 963 So. 2d 731 (Fla. 3d DCA 2007).

Affirmed.